CTS CORPORATION, Plaintiff,

v.

ELECTRO MATERIALS CORP. OF AMERICA, Defendant.

No. 70 Civ. 433 (JMC).

United States District Court, S. D. New York.

Aug. 16, 1979.

Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill. (Walther E. Wyss, Warren D. McPhee, Joseph Krieger, Chicago, Ill., of counsel), Gilbert, Segall & Young, New York City (Bernard J. Rosenthal, New York City, of counsel), for plaintiff CTS Corp.

Amster & Rothstein, New York City (Alfred B. Engelberg, Daniel S. Ebenstein, New York City, of counsel), for defendant Electro Materials Corp. of America.

## MEMORANDUM DECISION AND ORDER

CANNELLA, District Judge:

Defendant's application for attorneys' fees is granted, in part. Plaintiff is directed to compensate defendant in the amount of $306,532. 35 U.S.C. § 285.

In the Opinion filed herein on February 26, 1979, the Court awarded attorneys' fees to defendant Electro Materials Corporation of America ["EMCA"] and directed it to submit a fee application if the parties could not agree on an amount. *CTS Corp. v. Electro Materials Corp.*, 469 F.Supp. 801, 823–25 (S.D.N.Y.1979). No agreement was reached and defendant submitted an application seeking compensation for the $377,-572.91 it spent for its attorneys' fees and disbursements in connection with this litigation. The application was opposed by plaintiff CTS Corporation ["CTS"]. Thereafter, the parties supplemented their respective submissions as directed by the Court in a Memorandum dated June 15, 1979. Upon consideration of these submissions and the record of the proceedings herein, the Court makes the following ruling.

■ Initially, the Court agrees with CTS that the statutory power to award attorneys' fees, 35 U.S.C. § 285, is in derogation of the common law and should be strictly construed. *See Larchmont Engineering, Inc. v. Toggenburg Ski Center, Inc.,* 444 F.2d 490 (2d Cir. 1971). Additionally, both the parties and the Court agree with Judge Newcomer's statement of the statute's purpose:

> The basic rationale behind Section 285 is compensatory not punitive. The major purpose of the Section is to compensate a prevailing party for monies which he had to spend which he would not have had to spend but for the losing party's misconduct.

*Mueller Brass Co. v. Reading Industries, Inc.,* 352 F.Supp. 1357, 1381 (E.D.Pa.1972), *aff'd without opinion,* 487 F.2d 1395 (3d Cir. 1973); *see Louis Marx & Co. v. Buddy L Corp.,* 453 F.Supp. 392, 398 (S.D.N.Y.1978).

■ As to the specific elements of EMCA's fee application, the $59,210.91 in disbursements cannot be recovered as attorneys' fees. The extent to which these expenses will be reimbursed is properly determined in a post-judgment proceeding on a bill of costs. 28 U.S.C. § 1920; Fed.R.Civ.P. 54(d). The Court does not agree with EMCA's suggestion that "[n]o apparent purpose would be served" by affording CTS due process of law on this aspect of defendant's claim.

■ Second, the Court reluctantly disallows the $11,830 charged for the services of individuals who were not admitted to the practice of law at the time the services were rendered. As EMCA suggests, the Court is well aware of the practice of employing law students on a part-time basis prior to their graduation, and of the employment of law school graduates by law firms prior to their admission to practice. Nevertheless, the Court cannot hold that the amounts charged for the services of such individuals may be compensated as "attorney fees," within the meaning of the statute. The General Rules of this Court provide, in part:

> A member in good standing of the bar of any state, or of any United States district court, may upon motion be permitted to argue or try a particular cause in whole or in part as counsel or advocate. Only an attorney or proctor of this court may enter appearances for parties, sign stipulations or receive payments upon judgments, decrees or orders.

S.D.N.Y. General Rule 3(c). There is no other provision for the appearance of persons who are not members of the bar of this Court. The United States District Court for the Eastern District of New York allows law students to practice under certain conditions, but provides that such a student shall "neither ask for nor receive any compensation or remuneration of any kind for his services from the person on whose behalf he renders services." E.D.N.Y. General Rule 4.1(3)(e). Moreover, the Court is aware that the attorneys' fees that will be awarded are set in contemplation of secretarial and other overhead expenses. But to the extent that such costs are separately stated and attributed to the services of non-lawyers, they may not be recovered under 35 U.S.C. § 285. *But cf. Holly v. Acree,* 72 F.R.D. 115 (D.D.C.1976), *aff'd without opinion,* 186 U.S.App.D.C. 329, 569 F.2d 160 (1977) (*pro se* litigant may recover fees under 5 U.S.C. § 552).

The balance of EMCA's fee application is granted. The Court has previously stated its reasons for the fee award, 469 F.Supp. at 823–24, and will not reiterate those findings now. On the question of reasonableness, EMCA has provided the Court with two economic surveys conducted by the American Patent Law Association in 1974 and 1977. The surveys include specific information with regard to the billing rates of New York City patent attorneys.

In 1974, the median per hour billing rate for all private patent practitioners in New York was $67. *See* Standing Committee on Economics, American Patent Law Association, *Report of Economic Survey,* Table 33, at 45 (1974). "Median" is defined as "the value corresponding to the midpoint of the number of respondents, half falling above

and half falling below." *Id.* at 6. The report also provides a figure for the "upper quartile (75 percentile)" which is defined as "the value corresponding to the top 25% of respondents." *Id.* In 1974, the 75 percentile per hour billing rate for all New York private patent attorneys was $81. *Id.*, Table 33, at 45. The corresponding figures for all United States private patent attorneys were median $53, and 75 percentile $64. Thus, the average New York billing rates were approximately 126% of the national average. The average hourly rates for partners and associates in law firms were not broken down geographically. *Id.* at 44. However, the following nationwide figures are provided for 1974: Partner—median $56, 75 percentile $69; Associate—median $43, 75 percentile $51. *Id.*, Table 34, at 45. A rough approximation of the New York rate may, therefore, be calculated by multiplying the nationwide rates by 126%. Thus, the approximate New York 1974 partner/associate figures are as follows: Partner—median $71, 75 percentile $87; Associate—median $54, 75 percentile $64. Litigating partners generally earned more than other specialists. *Id.*, Table 21, at 31.

The accuracy of EMCA's billing records is not in dispute. In 1974, the bulk of partner-time devoted to this litigation by counsel for defendant was billed at between $70 and $75 per hour. The associate-time charged in 1974 was billed at $40 per hour.

In 1977, the median per hour billing rate for all private patent practitioners in New York was $79. *See* Standing Committee on Economics, American Patent Law Association, *Report of Economic Survey*, Table 38, at 37 (1977). The 75 percentile average New York hourly rate was $92. *Id.* The corresponding figures for all United States private patent attorneys were median $62, and 75 percentile $76. Thus, the median New York rate was approximately 127% of the nationwide average, while the 75 percentile rate was approximately 121% of the nationwide average. Again, the partner/associate figures were not broken down geographically. *Id.* at 40. The nationwide figures were: Partner—median $68, 75 percentile $80; Associate—median $48, 75 per-

centile $56. *Id.*, Table 39, at 37. Calculating from the nationwide figures, for an approximation of the New York hourly 1977 billing rates, yields: Partner—median $86, 75 percentile $97; Associate—median $61, 75 percentile $68. Litigating partners reportedly earned more than other specialists. *Id.*, Table 20, at 26.

In 1977, EMCA's lawyers devoted 1,101 hours of partner-time to this litigation; 692 hours were billed at $100 and 409 at $110. The allowable associate-time was billed at between $50 and $60 per hour.

■ Overall, EMCA's attorneys documented approximately 3,570 hours of lawyer-time devoted to this litigation over an eight year period. For this, they were compensated in the amount of $306,532. Their average hourly billing rate was $86. Approximately 83% of the total payments that EMCA seeks to recover were made between 1976 and 1978. In 1977, the median hourly rate for all New York City private patent attorneys was $79 and the 75 percentile average was $92. Accordingly, the Court concludes that $306,532 is a reasonable fee for the services that EMCA was required to purchase to defend itself in this litigation. The Court, in its discretion, now awards that amount to EMCA, the prevailing party in this exceptional case. 35 U.S.C. § 285.

CTS's arguments in opposition to the fee award are unpersuasive. It is not necessary to rule on the fraud claim in the context of this fee application. And, although EMCA's counterclaim against the Daily patent was dismissed as "academic," the story of CTS's development, testing, and sale of its Daily resistors lies at the heart of the Court's reasoning in declaring the Faber patent invalid. CTS's culpable nondisclosure of these events enabled it to procure both the Daily and Faber patents and to provoke nearly ten years of litigation in this Court and others.

Somewhat perplexingly, CTS chides EMCA's attorneys for their use of certain materials produced during the discovery proceedings conducted in another lawsuit involving the Faber patent. The fact that

defendant's attorneys were able to save time by this device has inured to CTS's benefit: it will not be required to compensate defendant for the attorney time that would have been required to develop the case "from scratch."

Finally, the Court does not agree that the fees charged by EMCA's lawyers should be reduced because their hair is not sufficiently gray. EMCA's case was well prepared and well presented. The Court would be hard pressed to point to any line of interrogation or exhibit that did not bear on the issues decided in this suit. The principles of chemistry necessary to an understanding of the facts were methodically established and coherently explained. In sum, the Court believes that the fees charged by EMCA's lawyers were entirely justified by the quality of advocacy that was purchased.

## CONCLUSION

Counsel for defendant EMCA is directed to submit a proposed form of judgment forthwith, on notice to counsel for plaintiff, embodying the Court's rulings in this proceeding, costs to be taxed against CTS.

SO ORDERED.