**CODEX CORPORATION and Yellow Freight System, Inc., Plaintiffs,**

**v.**

**MILGO ELECTRONIC CORPORATION and International Communications Corporation, Defendants.**

Civ. A. No. 76–793–S.

United States District Court, D. Massachusetts.

June 16, 1982.

See also, D.C., 534 F.Supp. 418.

Paul F. Ware, Jr., Goodwin, Procter & Hoar, Boston, Mass., for plaintiffs.

Marcus E. Cohn, and Cornelius J. Moynihan, Jr., Peabody & Brown, Boston, Mass., Harold L. Jackson, and Stanley R. Jones, Jackson, Jones & Price, Tustin, Cal., for defendants.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

SKINNER, District Judge.

In my Amended Findings, Rulings and Order of March 3, 1982 ("March Order"), I held that plaintiffs were entitled to recover their reasonable attorneys' fees under 35 U.S.C. § 285. Plaintiffs have now submitted time records covering the six years of this suit (from 1976 to 1982), defendants have employed a computer program to organize those records into a usable form, and three days of hearings have been held on the reasonableness of plaintiffs' request for $1,014,662.96 in fees and disbursements. For the reasons which follow, I find that plaintiffs are entitled to recover $678,832.50 in attorneys' fees and disbursements.

■ Section 285 provides that in "exceptional cases" a court "may award reasonable attorneys fees to the prevailing party" in a patent case. 35 U.S.C. § 285. "Exceptional" circumstances include "conduct that is fraudulent, malicious, in bad faith, [citation omitted], and unfair, inequitable, [or] unconscionable". *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 251 (6th Cir. 1979). The major purpose of awarding attorneys' fees in such cases is to "compensate the prevailing party for costs that it would not have incurred but for the conduct of the losing party". *Id.*, *Arbrook, Inc. v. American Hospital Supply Corp.*, 202 U.S.P.Q. 685, 688 (N.D.Tex.1979).

While § 285 clearly authorizes the award of "reasonable attorney fees", determining what items are properly included in that award has been a subject of some debate.

At the heart of the attorneys' fees award is time spent on the validity of the patent claims and some courts have held that that time is all that is recoverable under § 285. *See, Chromalloy American Corp. v. Alloy Surfaces Co., Inc.*, 353 F.Supp. 429, 432–33 (D.Del.1973).

■ I think that is too restrictive an approach. The compensatory purpose of § 285 is best served if the prevailing party is allowed to recover his reasonable expenses in prosecuting the entire action. These expenses include lawyers' fees for time spent on the issue of attorneys' fees itself, *see, Arbrook*, 202 U.S.P.Q. at 688, and disbursements necessary to the case. *See, id.*, at 690, *Molinaro v. Burnbaum*, 201 U.S.P.W. 150, 156 (D.Mass.1978), *but see, CTS Corp. v. Electro Materials Corp. of America*, 476 F.Supp. 144, 145 (S.D.N.Y.1979). The compensatory purpose of § 285, as well as the more general policy supporting assignment of nonlegal work to nonlegal personnel, *see, Furtado v. Bishop*, 635 F.2d 915, 920 (1st Cir. 1980), are also best served by allowing recovery of time spent by paralegal personnel, including summer law clerks.[1] *See, Clairol, Inc. v. Save-Way Industries, Inc.*, 211 U.S.P.Q. 223, 225–226 (S.D.Fla.1980), *but see, CTS Corp.*, 476 F.Supp. at 145. Inclusion of these items in an award under § 285, however, does not relieve a court of its responsibility to ensure that the fees and disbursements charged were reasonable.

*Due Process.*

■ Turning to the merits, defendants challenge my holding that plaintiffs are entitled to recover their attorneys' fees on the grounds that they were denied due process by my failure to conduct a separate evidentiary hearing on the "exceptional" nature of this case.

The same issue was presented in *Campbell v. Spectrum Automation Co.*, 601 F.2d 246 (6th Cir. 1979). In that case, the Dis-

---

1. I do not think, however, that plaintiffs are entitled to recover for secretarial services billed separately by their attorneys. *See, Clairol,* *Inc.*, 211 U.S.P.Q. at 225. Such costs are normally included as overhead in attorneys' hourly rate.

trict Court found that plaintiff had acted in bad faith based upon the evidence presented at trial. *Campbell,* 601 F.2d at 251. It then concluded that plaintiffs' conduct was sufficient to qualify the case as an "exceptional" one and awarded attorneys' fees under § 285. *Id.* at 250. Plaintiff's request for a separate evidentiary hearing on the reasonableness of his conduct was denied. *Id.* The Court of Appeals affirmed. It held that where the factual issues supporting a finding of "exceptional" circumstances are brought out at trial, the court is authorized to decide a motion under § 285 based solely upon the trial record. *Id.* at 252.

I reach a similar result in this case. In my March Order, I held that this was an exceptional case entitling plaintiffs to attorneys' fees. That holding was based upon my findings that defendants "deliberately fabricated the narrow skirt theory and have attempted to assert the Ragsdale '503 patent which the inventor himself admitted had no novelty". March Order at 33. These findings were based upon the extensive evidence produced at trial. Defendants knew that the issues of misrepresentation and obviousness were going to be raised at trial and had an opportunity to rebut plaintiffs' evidence at that time. Their failure to do so does not warrant an additional hearing.

*Attorneys' Fees.*

▆ The amount of attorneys' fees to be awarded is determined by using the "lodestar" approach. *Furtado v. Bishop,* 635 F.2d at 920. While the "lodestar" formula was developed in civil rights cases, it is applicable to "all cases" in which attorneys' fees are awarded. *Id.* It imposes a two-part analysis upon the court. First, the "lodestar" is calculated by multiplying a reasonable hourly rate by the number of hours spent, excluding time "beyond that consistent with a standard of reasonable efficiency and productivity". *Id.* Second, the lodestar is adjusted up or down to take account of factors not included in its initial calculation. *Id.* The lodestar approach, however, is not designed to enmesh the court "in a meticulous analysis of every detailed facet of the professional representation". *Copeland v. Marshall,* 641 F.2d 880, 903 (D.C.Cir.1980). Duplication and unnecessary expenditures of time can be compensated for by percentage reductions of the lodestar. *Id.*

*Rates.*

The appropriate hourly rates to be used in calculating the lodestar are "those prevailing in the community for similar work", taking into account the attorneys' skill and experience. *Id.* at 892. "If it appears that the hourly rate charged is within a range normally charged for [a] patent infringement suit by attorneys of comparable experience and expertise the Court will look no further". *Chromalloy,* 353 F.Supp. at 431.

As a basis for determining the prevailing rates, plaintiffs have submitted two studies by the Standing Committee on Economics of the American Patent Law Association, Inc. ("APLA"). Each study contains a summary of the results of a survey of rates charged by members of the APLA. The data is presented both on a nationwide basis and for individual cities, including Boston.

The results of the 1980 survey (discussed in the 1981 report) indicate that the hourly rates charged by plaintiffs' attorneys at Fish and Richardson are, with a few exceptions, at or below the 50th percentile for partners and associates on both a national and a Boston based scale. *See,* Appendix A. The three individuals who charged rates at the 75th percentile or higher are a partner with 30 years' experience and two associates (one with 3 and one with 5 years' experience) who were heavily involved in the case. I find that the higher rate was warranted for all three of those individuals because of their experience and ability.

Plaintiffs also employed the firm of Goodwin, Procter and Hoar to assist with the trial in this case. The partner most involved in the case was Paul F. Ware, Jr. He charged an average hourly rate of $91, an eminently reasonable rate for a litigator

of his skill and experience.[2] Three other partners at Goodwin, Procter and Hoar were also consulted on a limited basis, at rates ranging from $100 per hour to $120 per hour, along with one associate who billed at $48 per hour. The three partners were individuals of high skill and long experience and the rate charged for the associate was well within that charged by other Boston firms. As a result, I find that their rates were reasonable as well.

In most cases in which attorneys' fees are awarded, each attorney will be found to have two or more reasonable hourly rates depending upon the type of work done: a higher rate will be used to compensate for time spent in-court than for time spent out-of-court or doing administrative tasks. *See, Pilkington v. Bevilacqua*, 632 F.2d 922, 924 (1st Cir. 1980). I do not think that such a multi-tiered approach is necessary in this case, however. Because of the large number of attorneys involved, over 25, and the fact that the hourly rates charged by those attorneys were comparatively low, the difficulties that I would encounter in assigning different rates to all the different tasks performed by those attorneys is not warranted by any risk of unfairness to defendants created by use of straight hourly rates. Accordingly, the actual rates charged by plaintiffs' attorneys will be used to calculate the lodestar.[3]

*Hours.*

The next step in calculating the lodestar is to determine the number of hours reasonably spent by plaintiffs' counsel. The actual time spent and billed by plaintiffs' attorneys does not necessarily equal the reasonable time spent, it merely provides the starting point for my inquiry. *Copeland*, 641 F.2d at 891. In order to be compensable, the time has to be: (1) thoroughly documented; (2) spent upon the issues which gave rise to the finding of exceptional circumstances; (3) non-duplica-

tive; and (4) not spent in a manner inconsistent with "a standard of reasonable efficiency and productivity". *Furtado*, 635 F.2d at 920, *Copeland*, 641 F.2d at 891–892.

*Documentation.*

In order to recover attorneys' fees, the prevailing party has to submit a "detailed record of time spent ... and the duties performed". *King v. Greenblatt*, 560 F.2d 1024, 1027 (1st Cir. 1977). This duty is not limited to submitting the attorneys' raw time sheets, but requires that the time records be organized and presented in a manner which will enable the court to value that time. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2nd Cir. 1974). Valuation requires that the data be broken down to show the way in which the time was spent and by whom. *Id.*

Plaintiffs' submissions are not organized in such a manner. They consist of the time sheets, expense sheets, and bills prepared by plaintiffs' attorneys, with monthly totals by attorney. No attempt was made to categorize the time according to type of work done or person doing it.

In a case the size of this one, plaintiffs' submission is inadequate. In order for me to properly apply the *Furtado* approach and value the time spent by plaintiffs' representatives, I have to know how much time was spent on what kind of work and by whom. While that information is contained in the mountain of time sheets submitted by plaintiffs, the only way I could extract it is by analyzing each of the individual daily time sheets prepared by over 50 individuals over a six-year period. Such an effort would be an incredible waste of judicial time. The individuals and law firms who represented plaintiffs and whose time is to be categorized are in a much better position to undertake such a project. This is especially true where the costs of recovering attorneys' fees are included in the award, as they are here.

---

2. This is true even though he had not had much experience in patent cases. In fact, as a newcomer to modems, he was acutely aware of the problem of explaining modem technology to a judge who was also without technical background.

3. The actual rates charged by the paralegals and law clerks, which ranged from $15 to $32 per hour (with one technical consultant receiving $60 per hour during 1976), are reasonable and will be used as well.

Fortunately for plaintiffs, defendants have taken it upon themselves to organize the time sheets into a more useful form. They have done so through the use of a computer program. First, the information on the individual time sheets was key-punched for entry into the computer.[4] Second, the data was fed into a program which sorted it into several categories. The first set of categories consisted of type of work done.[5] The second consisted of monthly totals of work done by all people submitting time sheets, including lawyers, law clerks, paralegals, and secretaries. These categories were then sorted and summed in various ways in order to indicate what time was spent on what type of work by whom.

While I am not suggesting that a computer is necessary in order to determine the appropriate amount of an attorneys' fees award, I find that, with a few adjustments, the results of defendants' program provide a useful basis upon which to value the time spent by plaintiffs' attorneys.[6] The testimony indicated that plaintiffs' attorneys' time records were used to provide the data for the program and, after some tinkering, the program calculated a total amount of attorneys' fees charged remarkably close to that claimed in plaintiffs' totals: plaintiffs claimed approximately $809,000 in attorneys' fees (exclusive of disbursements) and the result of the computer run[7] was a total of approximately $812,000 in attorneys' fees. Accordingly, I will use $812,000 and the hours represented therein as the starting point for my valuation.[8]

■ I do think, however, that it is the responsibility of the prevailing to organize

4. According to the testimony of Joseph J. Dempty, the author of the program and the person responsible for its performance, only an insignificant number of time sheets were unable to be keypunched due to illegibility.

5. The computer was directed to select certain key words from the descriptions on the time sheets of the type of work done and assign that time to a separate category for each key word. The categories used were: Affidavit; AT & T; Conference; Deposition; Exhibit; Foreign; Fractional; Illegible; Interrogatories; Non-lawyer; Pleadings; Postbrief; Prior Art; Ragsdale; Reply Brief; Research; Rixon Litigation; Travel; Trial; Trial Brief; Trial Prep; Wm. Rymer; YF/Kansas 1; YF/Kansas 2; 0 Miscellaneous; Affidavit + (the plus indicates that the time was spent on an affidavit and some other project as well); AT & T/Bell +; Conference +; Deposition +; Exhibit +; Foreign +; Interrogatories +; Pleadings +; Post-brief +; Prior Art +; Ragsdale +; Reply Brief +; Research +; Rixon Litigation +; Travel +; Trial +; Trial Brief +; Trial Prep +; Western Electric +; YF/Kansas 1 +; YF/Kansas 2 +; and 0 Miscellaneous +.

6. Two major adjustments are necessary. The first results from the difficulty the keypunchers apparently had in reading individuals' initials. For example, GAM was an attorney with Fish and Richardson. Any time sheets submitted with his initials were placed in his category and the fee calculated by using his rate. On the other hand, no rate was included in the program for an individual with the initials CAM, because no such person worked on this case. Yet, the keypunchers read several time sheets to have been prepared by CAM and they were entered in his category, not in GAM's where they presumably belonged. Since CAM had no rate, no fee could be calculated and the hours were not included in the total calculations. A total of 1,107.9 hours were not included in this manner. If those hours are multiplied by the average rate charged by all persons working for plaintiff, approximately $50 per hour, an upward adjustment of $55,395.00 can be made in the grand total of charges calculated by defendants. The second major adjustment has to do with the way the "plus" categories are calculated and the changes that have to be made before they can be subtracted from the grand total where appropriate. *See*, note 8 *infra*.

7. Adjusted as discussed in n.6 and exclusive of approximately $3,000 in secretarial fees.

8. My discussion of the reasonable time spent by plaintiffs' representatives will be in terms of total charges for different types of work, not in terms of hours spent thereon (as is done in most lodestar cases). This approach is just as accurate and is more helpful in this case because: (1) the actual rates charged are being used to calculate the lodestar, thereby eliminating the need to separately tally the hours spent so that they can be multiplied by court-determined "reasonable" rates; (2) so many individuals were involved in this case, at so many different rates, that it would be very difficult and time consuming to break out all the separate hours and apply the appropriate charge; and (3) defendants' computer program has al-

the information in support of its requested award into a form similar to that prepared by defendants here. While it may be sufficient to submit the raw time sheets and summary totals in very small cases, it forces the court to do an organizational task much more efficiently done by the moving party. *Furtado* and the lodestar approach have been in use long enough so that counsel in cases as large as this one should be aware that a court is unlikely to look kindly upon an undifferentiated mass of time sheets. It is in the moving party's best interest, as well as the court's, to see that the information is presented in a manner which lends itself to ready analysis under *Furtado*.

■ Because plaintiffs failed to so organize their submission or to compensate defendants for the costs of doing so, I find that a 10% reduction in the requested fees award ($81,200) is warranted.

Taking the categories included in the computer program and the results therein as the starting point, other more specific areas of insufficient documentation warrant reductions.

■ First, there is the category of "fractional" charges. Some of the time sheets submitted included work on cases other than this one. Since the time spent on the different cases was not clearly identified, plaintiffs allocated a certain percentage of the time spent (usually 50%) to this case and included it in their requested award.

These hours are not compensable. Where a party cannot prove that the time claimed was spent upon an issue for which they can recover, the time will be excluded. In this case, the total amount included in the "fractional" category was almost $20,000. Since only one-half of that amount was claimed by plaintiff, only one-half, or $10,000, will be deducted from the requested award.

■ Second, the majority of time sheets submitted by William W. Rymer, a senior partner at Fish and Richardson, contained no description (or an illegible one) of the work conducted. Such unidentified time charges provide me with no basis for determining if the time was spent on a compensable issue, or in a reasonable manner. Accordingly, a 50% reduction in the $115,000 billed by Mr. Rymer is appropriate (resulting in a $57,500 reduction in the requested award).

*Issues.*

■ Plaintiffs can only recover for time spent on issues that were infected by defendants' misconduct. *See, Campbell,* 601 F.2d at 251. In my March Order, I found that defendants had acted improperly with respect to the Whang '023 and Ragsdale '503 patents. While defendants also lost on the Vilips patent, their conduct there did not warrant a finding of exceptional circumstances. Therefore, plaintiffs are not entitled to recover their attorneys' fees for work on that claim. While it is difficult to determine the amount of time spent on the Vilips claim from either plaintiffs' submissions or defendants' computer run, given that it was a minor part of this action, I find that a $20,000 reduction is appropriate.

Plaintiffs are entitled to recover for time spent appealing the forum issue (because it was an integral part of this action) and for time spent monitoring the other actions involving these patents (in order to locate useful evidence and legal theories). They are not entitled to recover the $8,500 claimed for time spent in the Rixon litigation (if recovery is appropriate anywhere, it is in that litigation itself) or the $8,000 claimed for time spent traveling.[9] *See, Furtado,* 635 F.2d at 922.

---

ready done the necessary sorting and produced its results in terms of total charges for a particular category, thereby producing a useful base from which to proceed.

**9.** The amounts claimed for time spent traveling and on the Rixon litigation were calculated in

the following manner: (1) the total charges in the "Travel" and "Rixon" categories were located, $510 and $738 respectively; (2) the total charges in the "Travel +" and "Rixon +" categories were located, $14,954 and $15,764 respectively; (3) the totals for the two "plus" categories were divided in half to reflect the

*Duplication.*

▬ Plaintiffs are also only entitled to recover for time spent in a nonduplicative manner. In order to recover for the full amount of time spent by several individuals working on one project, such as a brief, or appearing at one function, such as a deposition, plaintiffs have to provide a "convincing description of the division of labor". *Id.* Where no such description is given, reductions are warranted.

▬ The major area of duplication challenged by defendants is the retention of Goodwin, Procter and Hoar to assist Fish and Richardson during the trial. Defendants claim that in order for Mr. Ware to conduct the trial a large amount of time had to be spent educating him on relevant technology and patent law in general, resulting in a massive duplication of effort.

While it is clear that a fair amount of time was spent educating Mr. Ware, I do not think it was entirely unreasonable to do so. He is a much more experienced trial attorney than any of the Fish and Richardson personnel and did an excellent job presenting the evidence in a comprehensible manner. In fact, if Mr. Ware had been more involved earlier in the case, I suspect that significant savings would have occurred in the amount of time and money spent during the discovery process.

Defendants point to other areas of duplication as well: in attendance at depositions and trial; and in preparation of several briefs. These areas, combined with the fact that some time was lost in educating Mr. Ware, lead me to the conclusion that a 10% reduction is appropriate in the following areas: (1) conferences; (2) depositions; (3) post-trial brief; (4) reply brief; (5) trial; and (6) trial brief. Since a total of approximately $280,000 was charged in these areas, the 10% reduction amounts to $28,000.

double counting done by the computer in order to generate the plus categories, resulting in charges of approximately $7,500 and $8,000 respectively; and (4) the adjusted total charges from the plus categories were added to those

*Unreasonable Time.*

▬ Nor can plaintiffs recover for time spent in a manner inconsistent with "a standard of reasonable efficiency and productivity". *Id.* at 920. Defendants maintain that the vast majority of time spent by plaintiff on discovery is inconsistent with such a standard. They argue that with the wealth of information available from other cases, few new facts were available for discovery by plaintiffs.

Defendants' argument is not wholly correct in that it ignores the difficulties facing plaintiffs in this case. First, the major case which defendants contend could have been used by plaintiffs, *Milgo Electronic Corp. v. United Business Communications, Inc.* ("Kansas Litigation"), ended in a verdict unfavorable to plaintiffs' case. They then had to overcome the result of that case and prove that it had been based upon Milgo's misrepresentations. Second, defendants were uncooperative during discovery. Barriers to plaintiffs' efforts were constantly erected in order to conceal those misrepresentations.

Defendants are correct, however, in that even faced with these obstacles, plaintiffs engaged in a substantial amount of unnecessary discovery. This overkill is apparent in the thousands of dollars spent for legal research in support of basically factual discovery motions, in the number of marginally relevant documents requested and reviewed, in the number of depositions conducted, and in the time spent attempting to obtain modems for testing. The excessive amount of discovery conducted by plaintiffs warrants a 30% reduction in the following categories: (1) pleadings; (2) research; (3) depositions (above the 10% already deducted); and (4) miscellaneous. This reduction equals $65,400. A specific item of $16,000 to research a motion under Rule 37 is a particularly egregious example. An additional $15,000 shall be deducted on this account.

from the "pure" categories to reach the $8,000 and $8,500 figures. The same approach is followed for each of the other calculations made in the remainder of this opinion where both a "pure" and a "plus" category are involved.

*Calculation of the Lodestar.*

Beginning with the total amount claimed by plaintiffs and subtracting the previously discussed amounts, the lodestar is calculated as follows:

| | |
|---|---|
| Total fees claimed | $812,000 |
| Reductions: | |
| Documentation | |
|    organization | (81,200) |
|    fractional charges | (10,000) |
|    Wm. W. Rymer | (57,500) |
| Issues | |
|    Vilips | (20,000) |
|    Rixon | ( 8,500) |
|    travel | ( 8,000) |
| Duplication | (28,000) |
| Unreasonable time | (80,400) |
| Lodestar | $518,400 |

*Adjustments.*

In some cases, the lodestar will be adjusted up or down to take account of factors which are not included in its initial calculation. *Id.* at 924. The party proposing such an adjustment has the burden of proving that it is warranted. *Copeland*, 641 F.2d at 892.

No such adjustment has been shown to be necessary in this case. Plaintiffs have ar-gued that the lodestar adjustment should be used to bring the "reasonable" lodestar charge up to what they were actually billed. Such an adjustment, however, would evis-cerate the court's duty to determine a rea-sonable fee.

Accordingly, the amount of fees to be awarded to plaintiffs is $518,400.

*Disbursements.*

■ Plaintiffs have also requested ex-penses and disbursements of $200,540.63. In support of their claim they have sub-mitted copies of the original expense sheets and bills.

In reviewing those records, I find that a number of them include miscellaneous xe-roxing, telephone, and other charges which cannot be directly traced to this case, or even isolated in order to determine their reasonableness. Accordingly, a 20% reduc-tion in the expenses claimed is appropriate, bringing the amount of disbursements awarded to $160,432.50.[10]

*Summary.*

Plaintiffs are awarded $518,400.00 in fees and $160,432.50 in disbursements, for a total of $678,832.50. Judgment to enter.

## APPENDIX A

FIG 1    1980 NATIONWIDE PARTNER BILLING RATES
COMPARED TO F & R (INITIALS) RATES

10. Plaintiffs' request that Dr. Forney's travel expenses be included in the award is denied on the ground that he is a full-time Codex employ-ee.

FIG 2   1980 NATIONWIDE ASSOCIATE BILLING RATES
        COMPARED TO F & R (INITIALS) RATES

Survey data for Figs. 1 and 2 are from Tables 32 and 33 of the 1980 survey.

FIG 3   1980 BILLING RATES OF PARTNERS OF BOSTON PATENT LAW FIRMS
        (WITHOUT TAKING INTO ACCOUNT YEARS OF EXPERIENCE)

FIG 4    1980 BILLING RATES OF ASSOCIATES OF BOSTON PATENT LAW FIRMS
(WITHOUT TAKING INTO ACCOUNT YEARS OF EXPERIENCE)

Survey data for Figs. 3 and 4 and from Tables 29 and 30 of the 1980 survey.