**DATA GENERAL CORPORATION and Data General Corporation as Successor-in-Interest to Data General Service, Inc., Plaintiffs,**

v.

**GRUMMAN SYSTEMS SUPPORT CORPORATION, Defendant.**

Civ. A. No. 88–0033–S.

United States District Court, D. Massachusetts.

June 21, 1993.

Robert S. Frank, Jr., Kevin P. Light, Choate, Hall & Stewart, Boston, MA, Jacob Frank, Morris G. Nicholson, Westboro, MA, for plaintiffs.

David J. Apfel, Paul F. Ware, Goodwin, Proctor & Hoar, Boston, MA, Gary R. Greenberg, Goldstein & Manello, Boston, MA, Charles A. Gilman, and Robert A. Alessi, Cahill, Gordon & Reindel, New York City, Louis J. Scerra, Jr., Goldstein & Manello, Boston, MA, Gary L. Benton, Andrew M. Gold, and Ronald S. Katz, Coudert Brothers, San Francisco, CA, for defendant.

### MEMORANDUM AND ORDER ON PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS

SKINNER, Senior District Judge.

Data General seeks to recover the legal fees and costs it incurred prosecuting its copyright and trade secret claims against Grumman and opposing related defenses and counterclaims. The application, which totals $5,420,130, attempts to recover attorneys' fees, expert witness fees, costs, and interest:

1) Attorneys' Fees $3,405,272—fees paid to Choate, Hall & Stewart, plaintiffs' counsel of record, ($3,381,569) and to Arthur J. Levine, a copyright specialist, ($23,703). These totals include out-of-pocket expenses and other costs incurred by counsel and passed through to Data General.

2) Expert Witness Fees $1,710,034—fees paid to Deloitte & Touche, a national accounting firm, to analyze and compute the damages that resulted from Grumman's wrongful conduct. This total includes $125,225 in unspecified expenses.

3) Other Costs $673,925—Choate, Hall & Stewart incurred a variety of expenses that were billed in full to Data General. Some of the largest items include costs for the court reporter, copying, exhibit preparation, travel and airfare, Westlaw and Lexis, and document production. These amounts are already reflected in the attorneys' fees.

4) Prejudgment Interest $304,824—since Data General paid its legal fees as they were incurred at various times since 1988, plaintiff seeks to recover interest for the loss of the use of its money on attorneys' fees ($287,253) and on expert witness fees ($17,571).

## DISCUSSION

### I. The Copyright Claim

#### A. Attorneys' Fees

Data General contends that it is entitled to an award of attorneys' fees under 17 U.S.C. § 505, which provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C.A. § 505 (West 1977). "Although discretionary, the award of attorney's fees is 'the rule rather than the exception and should be awarded routinely.'" *Steven Greenberg Photography v. Matt Garrett's, Inc.*, 816 F.Supp. 46, 49 (D.Mass.1992) (quoting *Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255, 259 (5th Cir.1985)).

■ Section 412 of the Copyright Act, however, establishes copyright registration as a prerequisite to recovering attorney's fees:

> In any action under this title . . . no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration. . . .

17 U.S.C.A. § 412 (West Supp.1993). Data General argues that it is entitled to its attorneys' fees under the "general rule" of § 505, unless Grumman can prove the "exception" of § 412 bars an otherwise valid recovery of fees. Data General's argument is unpersuasive. Section 412 is plainly titled "Registration as *prerequisite* to certain remedies for infringement." 17 U.S.C.A. § 412 (emphasis added). Courts applying § 412 have barred recovery unless the plaintiff has demonstrated that registration predated the infringement. See *Cable/Home Communication Corp. v. Network Prod., Inc.*, 902 F.2d 829, 850 (11th Cir.1990) ("As a procedural matter, the plaintiff copyright owner must have registered the copyright prior to the infringement in order to obtain statutory damages."); *Evans Newton Inc. v. Chicago Sys. Software*, 793 F.2d 889, 896–97 (7th Cir.1986) (reversing an award of attorney's fees because § 412 prohibits the award of "attorneys' fees unless the plaintiff registers its copyright prior to the infringement"). Thus, Data General carries the burden of demonstrating that it complied with § 412's prerequisite.

■ I previously ruled that MV/ADEX revisions 0.0 and 1.0 were infringed prior to registration, thereby barring an award of attorneys' fees with respect to those works. Grumman argues that attorneys' fees must be denied, as well, for revisions 2.0 through 7.0 because Data General did not prove that the registration date for each revision of MV/ADEX preceded the infringing activity. While I agree that Data General has not made such a showing in its application for attorneys' fees, I am not persuaded that Data General cannot carry such a burden based on the evidence presented at trial. The form of its current application, however, is insufficient for me to render an informed ruling. Therefore, Data General shall resubmit its application for attorneys' fees and must show that MV/ADEX revisions 2.0 through 7.0 were registered before they were infringed by Grumman.[1]

---

1. Data General need not demonstrate that each revision of MV/ADEX was properly registered, as the jury has already made that finding.

■ That one or more revisions of MV/ADEX were not registered prior to infringement does not mean that Data General is necessarily barred from recovering 100% of its attorneys' fees. Where compensable and non-compensable issues are closely intertwined and involve a common core of facts or related legal theories, much of the plaintiff's efforts may be directed to the litigation as a whole, rather than to a series of discreet claims. *See Wagenmann v. Adams*, 829 F.2d 196, 225 (1st Cir.1987); *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1350 (1st Cir.1988). Here, it would appear that a large portion of Data General's efforts were applicable to all revisions of MV/ADEX. Data General may have incurred substantially the entire cost of prosecuting its copyright claim even if it sued on only a single compensable revision of MV/ADEX. A final determination, however, depends on whether Data General can demonstrate that it is entitled to fees for *any* revision of MV/ADEX. In its amended application, Data General must identify, in a useful manner, the portion of its fees that relate to compensable and non-compensable revisions of MV/ADEX (i.e. those registered before and after infringement, respectively) and any portion of the total fees that is alleged to be common to all revisions.

■ Assuming that Data General demonstrates that it is entitled to recover attorneys' fees on its copyright claim, the amount of those fees will be measured by the "lodestar" method. A court calculates a reasonable fee by multiplying the number of hours reasonably expended on a case by an attorney's reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561–66, 106 S.Ct. 3088, 3096–99, 92 L.Ed.2d 439 (1986). Though this figure is presumed to be the reasonable fee, a court may adjust the figure downward to account for unnecessary, unreasonable, or unproductive hours or upward, in unusual circumstances, to reflect superior performance. *Id.* at 564–66, 106 S.Ct. at 3098–99.

■ A party who seeks attorney's fees must submit detailed records of the time spent and the duties performed. Data General's application for its attorneys' fees consists of an affidavit describing, in general terms, the method by which fees were calculated and a binder containing well-over 500 pages of undifferentiated billing sheets and invoices spanning a five-year period of time. This court has previously explained that a prevailing plaintiff's duty "is not limited to submitting the attorneys' raw time sheets, but requires that the time records be organized and presented in a manner which will enable the court to value that time." *Codex Corp. v. Milgo Elec. Corp.*, 541 F.Supp. 1198, 1203 (D.Mass.1982). Grumman does not challenge the reasonableness of Data General's hourly rates but complains that the documentation accompanying the fee application does not permit meaningful scrutiny or analysis. I am in full agreement.

Though Data General's counsel, Mr. Frank, submitted an affidavit outlining the method of calculating the fee, plaintiff made no attempt to link the blinding detail contained in the billing sheets to the methodological assertions made in the affidavit.[2] Short of deciphering Data General's billing sheets, analyzing tens of thousands of lines of detail, and compiling some meaningful summary, this court and Grumman are unable to assess the reasonableness of Data General's fee application. Moreover, "[s]uch an effort would be an incredible waste of judicial time. The individuals and law firms who represented plaintiffs and whose time is to be categorized are in a much better position to undertake such a project." *Id.*

Data General shall resubmit its fee application in a form that permits this court to determine the reasonableness of the hours worked on each compensable claim, or group of related claims, at each major stage of litigation. For example, how many total partner, staff, and paralegal hours were expended to defend/prosecute each of the sig-

---

**2.** Data General's Exhibit A shows the billing rate and total hours worked for each attorney, paralegal, investigator and law student who worked on this case for each year since 1988. The exhibit, however, provides no help in determining wheth-

er the hours worked by a given attorney were reasonable, necessary, and nonduplicative because no attempt has been made to show what work was performed on what issue.

nificant motions filed in relation to the copyright claims? I am not interested in engaging "in a meticulous analysis of every detailed facet of the professional representation," nonetheless I would be neglecting my duty if I did not know who spent how much time working on what. *Id.* at 1202–03.

■ Data General contends that the results achieved in this case were extraordinary and suggest that an upward adjustment under the lodestar method would be appropriate. The Supreme Court, however, has explained that the novelty and complexity of the issues presented in a case, the special skill and experience of counsel, the quality of representation, and the results obtained from litigation are presumably fully reflected in the lodestar amount. *Delaware Valley,* 478 U.S. at 565, 106 S.Ct. at 3098. Choate, Hall & Stewart has represented Data General with uncommon diligence, skill, and integrity. In fact, the quality of representation may account for Data General's success before this court and the jury. Nonetheless, without minimizing Choate Hall's contribution, I cannot agree that this case represents one of the extraordinary situations where an upward adjustment can be justified. Choate Hall's market billing rates represent full compensation for the services rendered.

### B. *Expert Witness Fees*

Data General and Grumman agree that expert witness fees in excess of the statutory minimum established by 28 U.S.C. §§ 1920 and 1821 are not recoverable under federal law. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *West Virginia Univ. Hosp., Inc. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991).

### C. *Costs*

Data General incurred $673,925 in "standard litigation costs," of which $330,027 were of out-of-pocket expenses incurred by Choate

Hall and passed on to Data General; the balance of $343,898 was disbursed by Choate Hall to third parties for litigation-related expenses. Data General's application contains subtotals for each of the 30 expense categories (i.e. witness fees, court reporter, travel, courier, document production, etc.), and in a few cases provides additional information about the composition of the total. For example, in a reply memorandum Data General explains that court reporter fees of $77,228 include $13,526 for daily trial transcripts and $63,701 for deposition transcripts. No receipts, invoices, detailed account listings or explanations support the totals.

The law governing taxation of "costs" is not entirely coherent. The Copyright Act authorizes a court to award costs to a prevailing party, as does 28 U.S.C. § 1920. Grumman contends that the "costs" available under the Copyright Act are limited to those articulated in § 1920. Data General suggests that since the fee shifting provisions of the Copyright Act apply to this case, this court may award costs beyond those expressly allowed by § 1920.

■ The Supreme Court views § 1920 [3] as "an express limitation upon the types of costs which, absent other authority, may be shifted by federal courts." *West Virginia Univ.,* 499 U.S. at 87, 111 S.Ct. at 1141 (holding that a plaintiff proceeding under 42 U.S.C. § 1988 cannot recover expert witness fees, except to the extent they are provided by 28 U.S.C. §§ 1920 and 1821(b)) (citing *Crawford Fitting,* 482 U.S. at 441, 107 S.Ct. at 2497). Though the Court in *West Virginia Univ.* directly considered only expert witness fees, the Court explained in a footnote that the word "costs" in 42 U.S.C. § 1988 is to be read in harmony with the word "costs" in 28 U.S.C. § 1920. *Id.,* 499 U.S. at 87 n. 3, 111 S.Ct. at 1141 n. 3. The Court had previously reached the same conclusion with regard to "costs" under Fed. R.Civ.P. 54 and § 1920. *Crawford Fitting,*

---

**3.** A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title.

28 U.S.C.A. § 1920 (West 1966).

482 U.S. at 441, 107 S.Ct. at 2497. The implication of these decisions is that 28 U.S.C. § 1920 defines the "costs" that may be awarded under more general authority, such as 42 U.S.C. § 1983, Fed.R.Civ.P. 54 and, in this case, § 505 of the Copyright Act. Thus, Data General can recover only those "costs" expressly identified by § 1920.

The question of shifting "costs" does not end here, however, because the Supreme Court has suggested that some "costs" are better understood as "attorney's fees." The Court noted in *West Virginia Univ.* that certain disbursements made by the plaintiff's attorney and billed directly to the client were properly subsumed within the phrase "attorney's fee." *West Virginia Univ.*, 499 U.S. at 87 n. 3, 111 S.Ct. at 1141 n. 3 (citing *Northcross v. Board of Ed.*, 611 F.2d 624, 639 (6th Cir.1979) ("reasonable out-of-pocket expenses incurred by the attorney" properly included in the § 1988 "attorney's fee" award)). At least two district courts, including another judge of this district, have relied upon this language to permit a plaintiff to recover "costs" that would appear to be unauthorized by § 1920. In *Deary v. City of Gloucester*, 789 F.Supp. 61, 67–68 (D.Mass.1992), Chief Judge Tauro held that *West Virginia Univ.* did not prevent the plaintiff from recovering costs for "depositions, sheriff fees, photography, investigations, court costs, copying, parking, and telephone" under 42 U.S.C. § 1988. *Accord Doe v. Village of Crestwood*, 764 F.Supp. 1258, 1262 (N.D.Ill.1991) (treating reasonable out-of-pocket expenses incurred by the attorney and billed directly to the client as "attorney's fees").

■ In sum, Data General is entitled to recover those "costs" expressly identified in 28 U.S.C. § 1920, as well as those out-of-pocket expenses incurred by counsel and billed directly to Data General, which are customarily understood as "attorney's fees." Though a significant portion of Data General's expenses may ultimately prove to be recoverable, I can not make such an award at this time because Data General's application provides an insufficient basis for me to perform a meaningful review of its costs. Moreover, the application appears to include expenses which are clearly unrecoverable.

■ In its resubmitted application, Data General shall identify the "costs" which may be taxed under each subsection of § 1920. Each expense category shall be supported by a listing of the costs which comprise the total and a brief explanation of the nature of those expenses or be supported by some other meaningful analysis. I am not interested in mind-boggling detail, but I must have an adequate basis for determining the reasonableness and propriety of the costs to be taxed. In addition to a general lack of support, Data General's application appears to have erroneously included some costs.

■ Under § 1920(2), a court may tax the costs of only those depositions introduced in evidence or used at trial. *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 249 (1st Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985); *Walters v. President of Harvard College*, 692 F.Supp. 1440, 1442 (D.Mass.1988). Data General has apparently included the cost of all depositions, regardless of whether they were used or introduced into evidence at trial. As for the cost of obtaining daily trial transcript, I find that they were reasonably necessary in this case and may be properly taxed. The trial spanned more than nine weeks, involved complex technical and legal issues, and depended on witness credibility. Daily trial transcript was essential.

■ Under § 1920(3), Data General may recover disbursements for printing and witnesses. Data General seeks to recover several types of witness fees: $8,161 in "witness fees," $9,674 to reimburse witnesses for lost time or travel, $7,282 for an expert witness, and $2,160 to reimburse one of Grumman's experts. It appears that Data General impermissibly seeks recovery of its actual expenses; however, lacking sufficient information, I cannot be sure exactly what these amounts represent. Witnesses may be compensated only at the statutory rate specified in 28 U.S.C. § 1821. *Templeman*, 770 F.2d at 249–50.

Under § 1920(4), Data General may recover the costs for exemplification and copies of papers. This term has been given "broad reading to include maps, charts, graphs, pho-

tographs, motion pictures, photostats and kindred materials when necessarily obtained for use in the case." 6 *Moore's Federal Practice* ¶ 54.77[6] (1993). Data General's request for reimbursement of costs for copying and the production of trial graphics appears to be well-grounded. However, Data General shall provide additional explanation and detail as to the expenses that comprise the total, which exceeds $150,000.

In addition to "costs" which may be taxed under § 1920, Data General may recover out-of-pocket expenses incurred by its attorney and customarily billed directly to the client. The application contains "ancillary" expenses totalling $330,027 for items such as courier service, computer research, local travel, meals, telephone, postage, and parking. These items appear to be properly compensable as attorneys' fees. However, Data General's application does not contain sufficient detail or analysis to determine whether these expenses were reasonable and necessary. In addition, I cannot determine whether these expenses related solely to the copyright related claims, or represent total expenses for all portions of the litigation.

### D. *Interest on Attorneys' Fees*

 Since 1988, Data General has incurred and paid attorneys' fees and costs to its counsel and expert witness during the prosecution of this case.[4] Plaintiff argues, "In order to make Data General whole, it is necessary to compensate it for the loss of the use of its money during the time between its payment of fees and the entry of judgment for those fees."

Data General implies that courts routinely allow an award of prejudgment interest on attorney's fees. This is clearly not the norm. The Supreme Court has held that where an attorney represents a civil rights plaintiff under 42 U.S.C. § 1988 and does not receive compensation until years after the services were rendered, a district court may consider the delay in payment as one factor in determining an appropriate award of attorney's fees. *Missouri v. Jenkins*, 491 U.S. 274, 283,

109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). Data General urges this court to extend that reasoning to this case which involves a copyright plaintiff that paid its attorneys on a current basis. While the logic of compensating for the time value of money may apply in some abstract sense, I am not convinced that such an unusual remedy is warranted here. The policy interests at stake in civil rights litigation are not present in this case. Unlike most civil rights litigants who are unable to pay an attorney and must rely on the hope of securing a future award of attorney's fees, Data General was able to secure one of Boston's finest law firms who vigorously defended its client's interests.

Our court of appeals has recognized that a district court, in its discretion, may award prejudgment interest on attorney's fees to compensate a civil rights attorney for the delay in payment. *E.g. Cordero v. De Jesus–Mendez*, 922 F.2d 11, 19 (1st Cir.1990). Data General, however, has not cited a decision of our court of appeals that extends this principle beyond the civil rights context. Nor does Data General cite any decision where a court has awarded interest on attorney's fees in a copyright case. Though a majority of courts allow an award of prejudgment interest on copyright damages, these same courts have not gone so far as to award prejudgment interest on attorney's fees. For example, in *Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1550–53 (9th Cir. 1989), *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990), the court held that prejudgment interest is an available remedy under the Copyright Act. Later in the same opinion, the court examined the lower court's award of attorney's fees, but did not suggest that interest could or should be awarded on the attorney's fees. *Id.* at 1556–57. That courts have not awarded prejudgment interest on attorney's fees is not necessarily fatal to Data General's argument; however, neither does this silence persuade me to adopt Data General's argument. On the facts of this case, I find no reason to extend the prejudgment interest principle to

---

4. Data General concedes that federal law does not permit the plaintiff to recover expert witness fees in excess of the statutory rate, nonetheless it

attempts to recover prejudgment interest based on the actual fees paid to the expert. The claim is denied.

the award of attorneys' fees. Data General received a very large jury verdict and a generous award of prejudgment interest on its state-law damages. Even if I had the discretion to award prejudgment interest on Data General's attorneys' fees, I would decline to do so.

## II. The Misappropriation of Trade Secrets Claim

### A. *Attorneys' Fees*

In addition to finding a violation of federal copyright law, the jury found that Grumman violated Mass.Gen.L. ch. 93, § 42 which prohibits trade secret misappropriation. Section 42 itself makes no provision for an award of attorney's fees or costs. Data General, however, argues that the fee shifting provisions of another section of the same chapter, Mass. Gen.L. ch. 93, § 12, also apply to trade secret actions. Grumman, on the other hand, argues that § 12 is a component of the Massachusetts Antitrust Act, and as such, its fee shifting provisions are wholly inapplicable to Data General's trade secret claims. In a prior opinion, I did not reach this issue. However, since Data General may be unable to recover all of its attorneys' fees under federal law, I must now decide whether a plaintiff who prevails on a misappropriation of trade secrets claim under § 42 is entitled to an award of attorney's fees.

Section 12 provides in part:

> Any person who shall be injured in his business or property by reason of a violation of the provisions of *this chapter* may sue therefor and recover the actual damages sustained, together with the costs of suit, including reasonable attorney fees. If the court finds that the violation was engaged in with malicious intent to injure said person, the court may award up to three times the amount of actual damages sustained, together with the costs of suit, including reasonable attorneys fees.

Mass.Gen.L. ch. 93, § 12 (emphasis added). Relying on the literal language of the statute, Data General argues that § 12 is a "catchall" provision, apparently meant to make attorney's fees available to a plaintiff proceeding under any section of Chapter 93. I cannot agree.

Chapter 93 regulates an assorted collection of trade practices and enterprises, including antitrust, unfair sales, trading stamp companies, laundries and dry cleaning establishments, trade schools, outdoor advertising signs, trade secrets, consumer credit reporting, and the sale of hearing aids. Many of Chapter 93's subsections define statutory terms relevant to a particular trade practice or enterprise, establish procedures for pursuing claims under that subsection, and provide appropriate remedies for the particular injury addressed by that subsection.

Section 42, which defines the substantive provisions for the tort of misappropriation of trade secrets, provides that a plaintiff is entitled to recover actual damages and may receive a discretionary award from the court of up to double the amount of damages. Mass. Gen.L. ch. 93, § 42. The Massachusetts Antitrust Act addresses a distinct injury and provides a distinct remedy. Section 1 of Chapter 93 states "[s]ections one to fourteen A, inclusive, shall be known, and may be cited, as the 'Massachusetts Antitrust Act.'" Mass.Gen.L. ch. 93, § 1. In contrast to trade secret actions, § 12 of the Antitrust Act directs a court to award actual damages, including reasonable attorney's fees. In addition, a court may award treble damages for a malicious injury. Mass.Gen.L. ch. 93, § 12.

I see no reasonable basis for extending the remedial provisions of § 12 of the Antitrust Act to trade secret claims or any other action brought under Chapter 93. Any other holding would render superfluous many sections of Chapter 93 which specifically provide for an award of attorney's fees. Equally troubling, such an interpretation would appear to make treble damages available to a trade secret plaintiff, rather than the double damages expressly provided by § 42. Finally, I note that Data General was unable to produce, and I was unable to find, any case allowing attorney's fees on a Massachusetts trade secret claim pursuant to § 12 or any other provision. The fee shifting provision of § 12 is limited to actions brought under the antitrust act. Data General is not

**370**

entitled to an award of attorneys' fees on its trade secret claim.

### B. Expert Witness Fees

■ Data General urges this court allow recovery of its actual expert witness fees under the authority of Chapter 93, § 12. As I explained above, § 12 of the Antitrust Act is inapplicable to trade secret actions. Nonetheless, Data General may recover expert witness fees at the statutory rate permitted under Mass.Gen.L. ch. 262, § 29. *Waldman v. American Honda Motor Co.*, 413 Mass. 320, 597 N.E.2d 404, 406 (1992).

### C. Costs

■ The parties agree that Mass. R.Civ.P. 54(e) vests a court with the discretion to award the costs of taking depositions, "but in no event shall costs be allowed unless the court finds that the taking of the deposition was reasonably necessary, whether or not the deposition was actually used at the trial." Mass.R.Civ.P. 54(e). Grumman, however, complains that Data General has not shown that each deposition was reasonably necessary.[5] I agree.

■ Data General's application identifies the total cost of taking depositions and makes statements regarding the overall reasonableness of the costs. However, I must find that each deposition was reasonably necessary to the litigation. In its resubmitted application, Data General shall identify each party deposed, the costs of such deposition, whether each deposition was used at trial, and provide a brief explanation of its reasonable necessity. Once provided with such basic information on each deposition, I will be able to determine its reasonable necessity without a hearing.[6]

### D. Interest on Attorneys' Fees

The parties agree that Massachusetts law does not permit an award of interest on attorney's fees. *Patry v. Liberty Mobilehome Sales, Inc.*, 394 Mass. 270, 475 N.E.2d 392, 394 (1985).

### III. Summary

Data General's application for attorneys' fees and costs is inadequate. Data General shall resubmit its application, within 30 days of this order, in a form that permits meaningful scrutiny and analysis. Absent such support, the application will be denied. While the application and accompanying affidavits will probably be lengthy, the accompanying memorandum in support of its application shall not exceed 20 pages. Grumman shall have 20 days after Data General submits its application to oppose the revised application. No reply will be permitted.

---

5. Data General does not appear to seek recovery of any costs, other than deposition costs, under state law. I cannot be certain, though, because Data General offered only two sentences to support its claim for costs under state law, and the meaning of the second is unclear.

6. Massachusetts law appears to require a court to hold a hearing to determine the necessity and amount of depositions costs. *Waldman*, 597 N.E.2d at 409. While this court is compelled to follow the substantive provisions of Massachu-

setts law as interpreted by the Massachusetts Supreme Judicial Court, the same is not true for matters of procedure. In this case, the hearing requirement imposed on state courts by the SJC is at odds with federal practice, see LR, D.Mass. 7.1(D)–(F), and will be disregarded. I am confident that more than four years of presiding over this case and more than two months of trial testimony have adequately prepared me to make a determination as to whether certain depositions were reasonably necessary.