**U.S. INDUSTRIES, INC. and Dresser Industries, Inc., Plaintiffs,**

v.

**NORTON COMPANY, Defendant.**

No. 71–CV–359.

United States District Court, N.D. New York.

Jan. 10, 1984.

Darby & Darby, P.C., William F. Dudine, Jr., David R. Francescani, New York City, for plaintiffs; Lynn, Lynn & Miller, Richard J. Miller, Albany, N.Y., of counsel.

Allen Kirkpatrick, Cushman, Darby & Cushman, Washington, D.C., for defendant; Kohn, Bookstein & Karp, New York City, Richard A. Kohn, Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Senior District Judge.

This prolonged patent-antitrust action should be nearing its end. The complaint was filed August 12, 1971. The issues were tried to the court for eight trial days, September 19 to September 29, 1978. In an unpublished fifty-three page decision dated October 22, 1980 findings of fact and conclusions of law were made and explained. The decision described the case as an unusual one, of complex and wide-ranging issues, with technical and scientific evidence presented and developed at the trial by able and experienced counsel. The rulings therein were that the patent in issue was invalid as obvious, and also invalid and unenforceable by reason of the defendant's misconduct during the prosecution of the patent in the Patent office. The antitrust and unfair competition claims of the plaintiffs were dismissed, and their request for injunctive relief against the defendant's foreign patents was denied. The case was determined to be an "exceptional" one, and under the provisions of 35 U.S.C. § 285, attorney's fees were awarded to the plaintiffs. Thereafter, by memorandum-decision and order dated December 29, 1981, I outlined the scope of the attorney fees award, holding adverse to the contention of the plaintiffs, that the plaintiffs were entitled to fee award only on the patent claims, and not on the antitrust, unfair competition, and injunctive relief claims. By brief

order and judgment, dated December 13, 1982, a Panel of the Court of Appeals, Second Circuit, upheld the above rulings. 714 F.2d 119. The plaintiffs had appealed the antitrust and unfair competition dismissals, and the defendant cross-appealed the patent invalidity, patent fraud, and attorney fees award.

The attorneys for the plaintiffs (hereinafter Dresser) have filed two applications for attorneys' fees, disbursements and costs. The first is dated April 29, 1982, before the Second Circuit affirmance of December 13, 1982, and thereafter the second supplemental application dated May 23, 1983. Extensive briefing has been submitted in stages on these applications with oral argument hearings held on the record in Albany on June 20, 1983 and November 7, 1983. After the June 20, 1983 hearing, at my suggestion, substantial amounts of costs and disbursements were discussed and later settled by agreement between the parties. Otherwise, intense disagreement continues on numerous grounds and challenges raised by the defendant Norton to the two itemized and detailed applications filed by the attorneys for the plaintiffs. The amounts of attorneys' fees requested are computed in the final submission as $309,143.98 in the first application, and $104,866.00 in the second application for a total of $414,009.98. The first application covers legal services from 1970 to approximately 1981, the date of this court's judgment, and the second application covers the subsequent period to disposition of the appeal and for legal services in preparation of the first fee application. A separate issue to be decided is the reimbursement to the plaintiffs of an expert witness in the amount of $35,440.00 plus $75.25 disbursements.

There has been considerable judicial writing in the federal courts on attorney fee problems with a marked increase in recent years. The table of federal cases set forth in the briefs submitted herein number more than a hundred citations. Years ago such determinations did not seem as difficult and time consuming. *See In Re Niagara*

*Hudson Power Corp.*, 114 F.Supp. 683 (N.D.N.Y.1953), *aff'd*, 219 F.2d 859 (2d Cir. 1955). Fortunately, there is good guidance for solution of many of the disputes herein in two recent important rulings in regard to award of attorney fees made by the United States Supreme Court and the Court of Appeals, Second Circuit. Those authorities are *Hensley v. Eckerhart,* ——— U.S. ———, 103 S.Ct. 1933, 76 L.Ed.2d 40 (May 16, 1983), and *N.Y. State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir.1983), *petition for rehearing en banc denied*, August 2, 1983. The Second Circuit Panel concurring opinions in *N.Y. State Association for Retarded Children, supra,* pointed out that more enlightenment and clarification on attorney fee hourly rates and bonus factors may be forthcoming from the Supreme Court in *Stenson v. Blum*, 512 F.Supp. 680 (S.D.N. Y.), *aff'd sub nom., Blum v. Stenson,* 671 F.2d 493 (2d Cir.1981) (unpublished opinion), *cert. granted,* ——— U.S. ———, 103 S.Ct. 2426, 77 L.Ed.2d 1314 (1983).

▮▮▮▮ *Hensley v.· Eckerhart,* 103 S.Ct. at 1941, which is the dominant authority for such issues, cautioned that a request for attorneys' fees should not result in a second major litigation. The substantial submissions in this instance with practically complete legal disagreement approaches that description. I shall try not to unduly aggrandize the problems, but shall attempt to follow the *Hensley* recommendation to provide a concise but clear explanation of the reasons for the fee award and rulings in regard to the Norton challenges. *See Id. Hensley* held that the amount of the fee is to be determined on the facts of each case, and adopted for consideration the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). It also held that the most useful starting point to determine the fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. 103 S.Ct. at 1937, n. 3, 1939. The Court of Appeals, Second Circuit, describes this procedure as the establishment of a "lodestar" figure. *Cohen v. West Haven Board of Police Commis-*

*sioners,* 638 F.2d 496, 505 (2d Cir.1980) (citing *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir.1977) (*Grinnell II*)). Finally, Norton argues that inasmuch as the standards set forth in *Hensley* and in many other cases relied upon by plaintiffs were civil rights actions with the award of fees under 42 U.S.C. § 1988, they should not be applicable in this patent situation. The *Hensley* opinion forecloses this argument with the statement that the standards are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party". *Hensley, supra* 103 S.Ct. at 1939 n. 7.

The first challenge of Norton is that the total amount of attorneys' fees claimed by Dresser is clearly excessive in that there is a lack of categorization of the nature of services rendered and the time spent by the particular attorneys named in the items. That the number of hours and the hourly rates billed for services are excessive, and the services rendered were often duplicative. These challenges, in my judgment, were greatly weakened after reciprocal discovery was to be requested by plaintiffs of the Norton attorneys' billings by the letter of Attorney Kirkpatrick to Attorney Dudine of July 7, 1983. (Ex. E, pls. Reply Brief of October 24, 1983). The letter stated that the amounts billed, the billing rates, and the character of services as stated in the applications will be uncontradicted as a matter of fact with the reservation that certain designated issues would remain open and arguable as a matter of law.

▮▮▮▮ Significant and important as this concession may be, I find other independent and adequate support to uphold the categorization of legal services, the hourly rates charged except for reductions in the fee applications and for local counsel, and hourly time expended as set forth in the applications. The litigation covers a thirteen-year period and the docket entries of the Clerk of the Court (Pl.Ex. 1, November 7, 1983 hearing) indicates the varied and sustained legal efforts that were necessary and had to be undertaken in an unusual

and complex case. The hourly rates of lead Attorney Dudine began at $50.00 an hour in 1971, increased in reasonable amounts over the years, reaching $150.00 in 1981, and $180.00 in March 1982. Thus, there is satisfactory compliance with the historic rate formula recommended in *N.Y. Association for Retarded Children, Inc. v. Carey, supra,* 711 F.2d at 1152–1153, for cases that extend over a lengthy period of years. From my contact and observations over the years, the complexity and development of the unusual issues not only justified but compelled the staffing throughout the litigation of several attorneys for both sides. *N.Y. Association for Retarded Children, Inc. v. Carey, supra,* states also that prevailing parties are not barred as a matter of law from receiving fees for sending additional lawyers to depositions and trials, or from fees for background research. *Id.* at 1146. Also, in regard to excessiveness, Norton contends that the hourly rate should be fixed by the Court at the normal hourly rates prevailing for legal services in the City of Albany. This position of Norton is clearly untenable. In the affidavit supporting the first fee application, Darby and Darby, plaintiffs' attorneys, stated that the hourly billing rates were comparable to the rates of the top 25% of patent attorneys in New York City. This difficult case undoubtedly had to have the services of patent attorney specialists in order to analyze, prepare and present the issues competently to a court. The hourly billing rates for patent attorneys in New York City are set forth in the American Patent Law Association (APLA), Report of Economic Survey, attached to the first fee application as Exhibit F. The hourly rates charged here are within those ranges. Settled and reasoned case law supports the position of Dresser that New York City hourly rates are the proper and appropriate ones to be applied instead of the much lower Albany rates. *See Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir. 1983); *Donnell v. United States,* 682 F.2d 240, 252 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983); *Chrapliwy v. Uniroyal, Inc.,* 670

F.2d 760, 768 (7th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983); *Polk v. N.Y. State Dept. of Corr. Services, et al.,* 722 F.2d 23 (2d Cir. 1983); *Clairol, Inc. v. Save-Way Industries, Inc.,* 211 U.S.P.Q. 223, 224–5 (S.D. Fla.1980). To be consistent, in my judgment, the fees for Lynn and Lynn, acknowledged as an eminent Albany firm, are herein set at prevailing Albany rates. Actually, the legal services, although helpful to establish close contact with the Court, are those of local counsel for patent specialists from "out of town." The hourly rate is fixed at $50.00 an hour for the entire period with entitlement to disbursements. *See Capozzi v. City of Albany,* 565 F.Supp. 771 (N.D.N.Y.1983). The rates requested for payment of paralegals, if not settled, are fixed at the amounts requested as necessary and economical for attorney assistance. Use of paralegals makes good business sense. *See Hawkins v. Anheuser-Busch, Inc.,* 697 F.2d 810, 817 (8th Cir. 1983); *Spray-Rite Service Corp. v. Monsanto Corp.,* 684 F.2d 1226, 1250 (7th Cir. 1982); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 473 (2d Cir.1974); *In re Investors Funding Corp of New York Securities Litigation,* 562 F.Supp. 519, 521 (S.D.N.Y.1983); *City of New York v. Darling-Delaware,* 440 F.Supp. 1132, 1136 (S.D.N.Y.1977); *see also Use of Paralegals Makes Good Business Sense,* A.B.A.J., Nov. 1983, at 1626.

■■■ Defendant Norton argues also that the amount of fees requested should be substantially reduced because the patent results obtained by the plaintiff were of little value. The contention is that the invalidation of Norton's '939 patent in its entirety by my decision of October 20, 1980 was of little consequence as the patent has an expiration date of May 5, 1982, and there was no award of money damages or equitable relief. The Norton assertion that the results were simply not worth the effort, in my judgment, overlooks the importance and significance of the fraud finding in the prosecution of the patent. My lengthy decision of October 20, 1980, noted

the importance of the fraudulent procurement issue, characterizing it as most critical and serious. The decision noted the heavy burden of proof placed upon a plaintiff to establish such fraud by clear, convincing and substantial evidence. The decision recognized the salutory policy underlying this area of patent law due to the fact that a patent grant is affected with a strong public interest. The decision emphasized that consequently the highest standards of honesty, good faith, and candor by the applicants are required, *citing Kingsland v. Dorsey,* 338 U.S. 318, 319, 70 S.Ct. 123, 124, 94 L.Ed. 123 (1949); *Precision Instrument Mfg. Co. v. Automotive Machinery Co.,* 324 U.S. 806, 818, 65 S.Ct. 993, 999, 89 L.Ed. 1381 (1945). (October 20, 1980 Findings of Fact and Conclusions of Law, pp. 20–23). In my decision of December 29, 1981, p. 2, I stated that the main issue was the validity and enforceability of the '939 patent and that defendants' misconduct led me to the conclusion the case was "exceptional".

These above admonitions by the highest judicial authority cannot be treated as mere rhetoric, but must be accepted as valuable safeguards to protect the public interest and to guide the patent bar. The fraudulent procurement was found by me despite the previous rulings in regard to the same '939 patent, that there was only "affirmative misconduct" in the prosecution of the patent that allowed it to be upheld in much narrower scope. *See Norton Co. v. Carborundum Co.,* 397 F.Supp. 639 (D.Mass.1975), *aff'd,* 530 F.2d 435 (1st Cir.1976). The value of such efforts and results in this case are self-evident as a valuable public service and has been so recognized. *True Temper Corp. v. CF & I Steel Corp.,* 601 F.2d 495, 509 (10th Cir. 1979); *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.,* 407 F.2d 288, 294 (9th Cir.1969). The Court of Appeals, Second Circuit indicating again its importance has pointed out that fraudulent procurement alone permits the discretionary award of attorneys' fees for an "exceptional case" under 35 U.S.C. § 285. *Digitronics Corp. v. New York Racing Assoc.*

*Inc.,* 553 F.2d 740, 749 (2d Cir.1977); *Timely Products Corp. v. Arron,* 523 F.2d 288, 305 (2d Cir.1975); *Kahn v. Dynamics Corp. of America,* 508 F.2d 939, 945 (2d Cir.), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975). The attempt to downgrade the value and importance of the fraudulent procurement result is not acceptable. Also, the fraudulent procurement issue was treated by me as a critical and serious patent issue and in my judgment, attorneys' fees should be awarded for its prosecution as a claim of pure patent nature. This issue is independent of the antitrust and unfair competition claims for which the legal services rendered have been satisfactorily excluded in the fee applications. The case relied upon by the defendant Norton to dilute the attorneys' fees as somewhat related to the antitrust claims involved a jury verdict, and the quote from it in the Norton brief does not provide good support for the Norton position. *See Solvex Corp. v. Freeman,* 459 F.Supp. 440, 450–451, (W.D.Va.1977).

The next challenges of the array filed by defendant Norton are that the plaintiffs are not entitled to attorney fees for time spent by their attorneys in the preparation of the fees and cost applications, and in settlement discussions held at various stages of the litigation among the attorneys and parties. In my judgment, the plaintiffs are entitled to both of these requested awards. The case law that I find persuasive and sound to award fees for the preparation of the application is: *Spray-Rite Service Corp. v. Monsanto Corp., supra,* 684 F.2d at 1250; *Gagne v. Maher,* 594 F.2d 336, 343–344 (2d Cir.1979), *aff'd on other grounds,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir.1978); *Prandini v. National Tea Co.,* 585 F.2d 47, 52–54 (3rd Cir.1978); *Codex Corp. v. Milgo Electronics Corp.,* 541 F.Supp. 1198, 1201 (D.Mass.1982), *aff'd,* 717 F.2d 622 (1st Cir. 1983); *Berkeley Park Clothes v. Firma Schaeffer-Homberg GMBH,* 217 U.S.P.Q. 388, 392 (D.C.N.J.1981).

■ However, I do agree with Norton that patent specialist expertise was not necessary in the preparation of the fee applications, even though I find them exemplary ones. Essentially their assembly is a matter of billing review, arithmetical computations and legal study and briefing on attorneys' fees case law. It is established that a different rate of compensation may well be set for different types of litigation tasks. *Cohen v. West Haven Bd. of Police Commissioners, supra,* 638 F.2d at 505. The hourly rate for the preparation and submission of the fee applications is reduced to $85.00 per hour for each attorney so involved. Also, the allocation of fees to the patent issue, urged as being 70% for the patent and 30% to antitrust, is reduced to a 60/40 percentage allocation. Consideration of the trial briefs and my October 22, 1980 decision lead to this change.

■ The settlement discussions were intense and most important efforts in unsuccessful attempts to end a costly, prolonged litigation. Common sense often makes good law. *Peak v. U.S.,* 353 U.S. 43, 46, 77 S.Ct. 613, 615, 1 L.Ed.2d 631 (1957) (Douglas, J.). Common sense and reasoned authority dictates that settlement negotiations so essential to our legal system must not be discouraged by failure to compensate for such legal assistance as reasonable expenses. *See Lund v. Affleck, supra,* 587 F.2d at 77. Likewise, with the same application of common sense reasoning, the plaintiffs are entitled to attorney fees for the attendance of the attorneys at the *Carborundum* trial and proceedings in Massachusetts. Several of the witnesses at that trial testified at the trial in Albany, and there is no doubt that appraisal of the *Carborundum* trial was important to the trial to be held here.

The plaintiffs are awarded without reduction the fees incurred in resisting the cross-appeal of Norton in the Court of Appeals, Second Circuit, on the patent fraud, patent invalidity and the right to an award of attorneys' fees issues. As the plaintiffs point out in their Reply Brief of October 24, 1983, the statement in the Judgment, dated January 14, 1982, that reasonable attorney fees are awarded to the present date was only used in settling the order and to reject the Norton contention that attorney fees should only run to the date Norton withdrew its counterclaim for patent infringement. Jurisdiction and discretion remains here to award the attorney fees on the Norton cross-appeal exclusive of, as the plaintiffs have done, the antitrust, unfair competition and injunctive relief determinations appealed by plaintiffs. *See Miller v. Amusement Enterprises, Inc.,* 426 F.2d 534, 539 (5th Cir.1970); *Codex Corp. v. Milgo Electronics Corp., supra,* 541 F.Supp. at 1205; *Fleet Investment Co. Inc. v. Rogers,* 505 F.Supp. 522 (W.D.Okla.1980).

■ The plaintiffs seek interest on the fee awards to be granted in order to compensate for the long delays in payment. *See generally Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056 (Fed.Cir.1983). The legal fees began to be incurred in 1970, and the plaintiffs contend that they were ready for trial in 1974. There is arguable merit in this contention, but after careful consideration I deny the request for interest. The delay in payment, with several instances of court stays, cannot be attributed solely to defendant Norton. The court acting in accordance with its judicial responsibilities appropriately granted the stays. Moreover, the settlement discussions which occurred throughout the litigation with the hope that the *Carborundum* determinations (*Norton v. Carborundum, supra,* 530 F.2d 435) would solve a number of the issues in the action before this court), also contributed to the delay. Finally, the fee award to the plaintiffs is very substantial, and in my judgment, does not require the embellishment of interest to be fair.

■ The plaintiffs request earnestly an award for the substantial fee paid to Dr. James B. Gambrell, their expert witness who testified at the trial. This award is sought not as an item of cost, but as a reasonable legal expense under the circumstances of this unique case. There is no question that Dr. Gambrell is eminent in

his field, all of his testimony was vital and of great importance in the presentation of the patent issues. However, in my judgment, authoritative text writings militate against such an award that would expand it far beyond the usual statutory "cost" category for the taxation of witness fees. *6 Moore's Federal Practice*, ¶ 54.77[5.–3] at 1734 (1972). The interpretation of the antitrust statute 15 U.S.C. § 15, provides a persuasive analogy for application in this instance. The Court of Appeals, Second Circuit, has expressed unequivocally that a prevailing party under this antitrust statute is not to be compensated for fees paid to an expert witness as a "cost of suit" under the statute. *Berkey Photo, Inc. v. Eastman Kodak, Inc.*, 603 F.2d 263, 309, n. 75 (2d Cir.1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 81 (2d Cir.1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *see also Vecchione v. Wuhlgemuch*, 481 F.Supp. 776, 789–799 (E.D.Pa.1979); *CTS Corp. v. Electro Materials Corp. of America*, 476 F.Supp. 144, 145 (S.D.N.Y.1979). It is difficult for me to categorize the substantial expert witness fee request here with the usual "out of pocket" expenses for such lesser amounts allowed in cases offered by the plaintiffs, including several in this district court. *See Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir.1979); *New York State Teamsters Conference Pension v. Hoh*, 561 F.Supp. 687, 691 (N.D.N.Y.1982); *Thomas v. Board of Education*, 505 F.Supp. 102, 103 (N.D.N.Y.1981). If the expansion in regard to expert witness fees in a civil action, *see Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.1981), is to be applied in patent litigation, such a ruling should be made by the Court of Appeals, Second Circuit. The request to reimburse for the expert witness fee is denied.

To summarize, the above numerous rulings: In the main, the fee applications and positions of the plaintiffs' are upheld. However, the hourly rates fee for local counsel are fixed at $50.00 (fifty dollars) per hour, with disbursements; the hourly rates for patent counsel in the preparation and submission of the fee applications are fixed at $85.00 (eighty five dollars) per hour; the allocation for patent and antitrust legal services is fixed at a 60–40 percentage instead of the 70–30 percentage requested by the plaintiffs; the request for interest to be applied to the fee awards is denied, as is the request for payment of the expert witness fees and expenses.

In view of the above rulings and their application a recomputation of amounts awarded will be necessary. An order accordingly, if consented to, shall be submitted, otherwise to be settled on ten days notice.

It is so Ordered.