**PPG INDUSTRIES, INC., Plaintiff,**

v.

**CELANESE POLYMER SPECIALTIES COMPANY, INC., Defendant.**

**Civ. A. No. 78–0380–L(A).**

United States District Court,
W.D. Kentucky,
Louisville, Division.

April 2, 1987.

Wm. C. Guethlein, Louisville, Ky., Edward M. O'Toole, Carl E. Moore, Jr., Chicago, Ill., Carl T. Severini, Pittsburgh, Pa., for plaintiff.

Herbert F. Schwartz, New York City, John T. Ballantine, Ogden & Robertson, Louisville, Ky., Herbert F. Schwartz, David J. Lee, James F. Haley, Jr., Ron E. Shulman, Fish & Neave, New York City, Andrew F. Sayko, Jr., Chatham, N.J., Herbert P. Price, Jeffersontown, Ky., Thomas J. Morgan, Robert A. Longman, Celanese Corp., New York City, for defendant.

## MEMORANDUM OPINION

ALLEN, Senior District Judge.

This action is submitted to the Court upon the application of Celanese for an award of $1,281,807.24 in attorneys' fees and disbursements. Plaintiff objects to an award in that amount as being unjustified in fact and law.

The right of the defendant to an award of attorneys' fees is based on 35 U.S.C. § 285, which provides: "The Court in exceptional cases may award reasonable attorney fees to the prevailing party." This Court has previously determined that this is an exceptional case, and has also determined that award of fees is appropriate. In the case of *Morgan Adhesives Co. v. Chemtrol Adhesives, Inc.*, 574 F.Supp. 832, 833 (N.D.Ohio 1983); *aff'd* 765 F.2d 158 (Fed.Cir.1985), the district court stated the controlling principles governing the award of the fee as follows:

> In patent cases, 35 U.S.C. § 285 permits an award of attorney's fees to the prevailing party when the circumstances are "exceptional." [footnote omitted]. Such an award "is intended to compensate the prevailing party *for costs that it would not have incurred but for the conduct of the losing party* and is within the sound discretion of the district court." *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 251 (6th Cir.1979). [emphasis added].

To courts that regularly host claims brought under any of several employment or civil rights statutes, award of attorney fees is a familiar task, and a substantial body of authority exists to guide the court's exercise of discretion. To determine whether that authority is available to assist us here, we must analyze whether the standards developed for setting the amount of an award under 42 U.S.C. Sec. 1988 are dependent on either the purpose of that fee-shifting statute or the usual identity of the parties.

The fact that defendants in civil rights suits are usually public bodies is not the justification for the rigorous examination given fee applications under Sec. 1988. See, e.g., *Beazer v. New York City Transit Authority*, 558 F.2d 97, 101 (2d Cir.1977) (courts should avoid "either the reality or the appearance of awarding 'windfall fees.'"). The same standards are used in connection with 42 U.S.C. Sec. 2000e–5(k), where the defendants are typically private employers. *Louisville Black Police Officers Organization v. City of Louisville*, 700 F.2d 268 (6th Cir.1983); see also, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and S.Rep. No. 94–1011. It seems clear that the identity of the party liable for the fee is irrelevant in fixing the amount of the award.

A rationale for abandoning the "American rule" and awarding fees to successful civil rights plaintiffs is to encourage enforcement of public policy and to encourage representation by attorneys who presumably would be hesitant to take such cases with no prospect of payment. No such justification supports the patent law fee-shifting statute, since it is apparent that entities like the parties to this case will have the services of competent attorneys regardless of the potential for fees in exceptional cases. Indeed, the poor or non-existent contemporaneous fee records indicate little concern that this case would include a fee award phase. Does a different justification for fee-shifting compel use of different standards for setting amounts?

We think not. 42 U.S.C. 1988 also permits awards to prevailing defendants in exceptional cases, which is the standard in the patent law statute involved here. *Smith v. Smythe-Cramer Co.*, 754 F.2d 180 (6th Cir.1985). Once a court justifies a defendant award by finding exceptional circumstances, the standards used in setting the *amount* of the fee award are the same as those used in setting the more routine plaintiff's award. See, e.g., *Nash v. Reedel*, 86 F.R.D. 16 (E.D.Pa.1980). Thus, since neither the identity of the parties nor the rationale supporting award of fees is relevant in fixing the amount, we believe the fee-setting standards developed in connection with 42 U.S.C. Sec. 1988 may properly guide the court's discretion in this case.

One implication of this determination is that we will not find a requested fee appropriate simply because the applicant law firm has billed fees that its client is willing to pay. In awarding a fee, a court cannot avoid giving the public the impression of endorsement. Lack of challenge by a particular client is not support for the appearance of endorsement of an unusual billing practice. Additionally, it will be necessary for us to insist on adequate documentation. We are required to clearly spell out the basis of our findings. *Northcross v. Memphis Board of Ed.*, 611 F.2d 624 (6th Cir.1979). This we are unable to do unless the applicant clearly spells out the basis for the request. *Webb v. Dyer County Bd. of Ed.*, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985).

As noted earlier, we will permit recovery only of those costs incurred because of the conduct of PPG Industries. *Campbell v. Spectrum Automation*, 601 F.2d 246, 251 (6th Cir.1979). Furthermore, the language of the statute requires that the fees be reasonable. In accord with the case of *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), we will favor the basic approach of "reasonable hours times a reasonable rate." We will seek documentation showing what work was performed by each attorney, when it was performed, and what

rate was charged for that work, and from this we can make the necessary determinations of reasonableness. With these basics in mind, we turn to the request itself.

Defendant seeks $742,955.00 for services billed to it by the firm of Fish & Neave. Defendant requests the Court to award $37,992.75 for services performed by Fish & Neave on antitrust issues that were raised by Celanese in its counterclaim. The cases of *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 475 (Fed.Cir. 1985); *Stickle v. Hueblein, Inc.*, 716 F.2d 1550, 1564 (Fed.Cir.1983); and *U.S. Industries, Inc. v. Norton Co.*, 578 F.Supp. 1561, 1566 (N.D.N.Y.1984), indicate that fees should not be awarded under 35 U.S.C. § 285 for litigation of non-patent issues such as antitrust. This is a sound rule since 15 U.S.C. § 15 would allow Celanese to recover antitrust attorneys' fees if it prevailed on antitrust issues. We, therefore, disallow the entire amount of the fees sought for antitrust services.

Celanese also seeks to recover $42,-870.00 for the use of Fish & Neave secretarial services, word processing equipment, library and general office staff. These services are generally considered part of an attorney's overhead, and as such, have usually been deleted from awards made to attorneys under 35 U.S.C. § 285. *See Clairol Inc. v. Save-Way Industries, Inc.*, 211 USPQ 223, 225 (S.D.Fla.1980); *Codex Corp. v. Milgo Electronic Corp.*, 541 F.Supp. 1198, 1201, n. 1 (D.Mass. 1982), *aff'd* 717 F.2d 622 (1st Cir.1983); *CTS Corp. v. Electro Materials Corp. of America*, 476 F.Supp. 144, 145 (S.D.N.Y.1979). This is a sound practice.

As noted by the plaintiff, the fees charged by Fish & Neave are greatly in excess of those charged by the Louisville firm of Ogden & Robertson, who have requested a reasonable fee of $85.00 per hour for their services. To add secretary and office fees to these fees charged by Fish & Neave would be clearly unreasonable. Because of failure to show that the cost is reasonable, and because this is not an item of expense customarily billed to fee-paying

clients, this amount will be disallowed in its entirety. *Northcross, supra.*

Next, Celanese seeks to recover $54,-371.25 in fees for services rendered in preparing the fee petition after the Court's November 20, 1986 decision. That request is clearly unreasonable on its face. Defendant claims that an attorney spent over one hundred hours supervising preparation of the petition at a billing rate of $230.00 per hour, and that another newly hired attorney spent over one hundred hours at $80.00 per hour, and that a total of 328 attorney hours and 78 paralegal hours were spent on the petition. No hourly logs were submitted in support of the application, so it is impossible to determine who performed what services.

■ As the court observed in *U.S. Industries, supra,* higher rates charged by patent litigation attorneys are not warranted for preparing fee petitions which essentially involve billing, reviewing arithmetic computations and legal study and briefing on attorneys fees case law. In *U.S. Industries,* the court reduced to $85.00 the hourly rate for each attorney involved in the preparation and submission of fee applications. We believe that in the case at bar, where the respected and able litigators at Ogden & Robertson have requested fees of $85.00 per hour, this rate is applicable to the time spent by Fish & Neave partners on the preparation of the fee applications. We also believe that rates of $60.00 per hour should be awarded to Fish & Neave associates instead of the requested $80.00 per hour. We likewise believe that paralegal rates of $30.00 per hour, which is the going rate in Louisville, should be used rather than $55.00 per hour, and that Fish & Neave's secretarial and office fees should be eliminated. These computations reduce the amount of the petition preparation fees to $24,920.75.

■ The fees must be further reduced because of lack of documentation and because of the probability of duplication. Applicants have presented us with essentially the same problem confronting the court in *New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136 (2d Cir.1983). In that case, the court denied *all* recovery of fees for time spent preparing the fee petition, observing, at page 1148, that it was the applicants' own negligence that resulted in the size of their request:

> The inordinate amount of time [applicants'] attorneys spent on the fee application was a direct result of their failure to keep better records. Because there were no contemporaneous time records, [applicants'] attorney ... had to spend numerous hours reviewing documents and preparing affidavits in support of their application.

The same is true in our case. The form of the bills submitted strongly suggests that contemporaneous time records were created, and the affidavits confirm this practice. It appears, however, that the records were not provided the client, and were not retained in any readily accessible form, such that many hours were spent attempting to piece those records back together. We cannot agree that these hours would customarily be billed to a paying client (*Northcross, supra*), or that it could be said that these hours were spent because of "the conduct of the losing party" (*Campbell v. Spectrum, supra*). We believe that a reduction of 20% as to this item is fair and that a total award for the preparation of the fee request should not exceed $19,936.60. In accordance with *Coulter v. State of Tenn.,* 805 F.2d 146 (6th Cir.1986), and in light of our action, *infra,* we will further limit the amount for the fee phase to three percent of the substantive work, and we will allow $7,855.68.

We next come to the request of defendant for an award of $275,827.25 for fees paid to Fish & Neave for opposing PPG's reissue applications in the Patent Office. Plaintiff submits that none of this amount should be awarded because it constitutes fees for nonmandatory ancillary administrative proceedings. Case law indicates a conflict of authority on this subject. *See Bowmar Instrument Corp. v. Texas Instruments Inc.,* 200 USPQ 577 (N.D.Ind. 1978), holding that the fees are not recoverable, but *see, contra, Scott Paper Co. v. Moore Business Forms, Inc.,* 604 F.Supp.

835 (D.Del.1984), and *Gilbreth International Corp. v. Lionel Leisure, Inc.*, 587 F.Supp. 605 (E.D.Pa.1983).

In *Bowmar, supra,* Texas Instruments alleged that Bowmar intentionally committed fraud on the Patent Office by acquiring and defending a patent. In 1974, Texas Instruments requested that an interference be filed against the patent. The next day, Bowmar filed suit against Texas Instruments in the Northern District of Indiana. In 1976, Bowmar conceded priority in the interference to Texas Instruments and dedicated the patent to the public. Texas Instruments argued that the interference proceeding was directly related to the Northern District of Indiana law suit, that it was defended in bad faith and that the court should award fees for services rendered in the interference proceedings. The court held that it was unwilling to award fees for an action before another tribunal which itself could not award fees. The court held that even if it was to make an award of fees, it would be very difficult or almost impossible for the court to award those fees accurately regarding the conduct of a separate action before a different kind of tribunal.

In the case of *W.F. Altenpohl, Inc. v. Gainesville Machine Co., Inc.,* 185 USPQ 497 (N.D.Ga.1975), District Judge O'Kelley held that attorney's fees should be limited to fees for the defendant's actual defense of the patent infringement action and should not include fees for pursuing any counterclaims or for the award of attorney's fees. In that action, Altenpohl, Jr. received a patent, although he was aware that his father had previously received the patent. After he was granted the patent, he brought suit alleging infringement. The defendant counterclaimed that the Altenpohl, Jr. patent had been obtained by fraud on the Patent Office because of the failure to disclose the Altenpohl, Sr. patent. Plaintiff then surrendered its patent and sought a reissue patent with the Altenpohl, Sr. patent fully disclosed. The reissue patent was denied with respect to claims 12, 14 and 16.

■ We believe that *Bowmar, supra,* and *Altenpohl, supra,* represent the better view with regard to the issue of attorney's fees for services performed before the Patent Office. The public policy of encouraging resort to administrative agencies would not be served by awarding fees that could not have been recovered if the parties had relied on the Patent Office proceedings in the first instance. Neither do we feel competent to judge the reasonableness of fees billed for services in another forum.

Our conclusion also finds support in *Webb v. Dyer,* in which the Supreme Court refused to extend *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) to statutory schemes that do not include an exhaustion requirement. In this case, as in *Webb,* resort to the non-judicial body is non-mandatory, and a party has the option of proceeding directly to Court.

The Court is fully aware of defendant's contention that resort to the Patent Office in this case was not "voluntary" in the strictest sense, since the proceedings in that forum substituted for judicial proceedings. We do not believe that this compels payment of fees. *Webb, supra,* left open the possibility that under certain circumstances, some work done before administrative agencies might be compensable. A claimant to such fees would be required to point out the "discrete portion of the work product ... that was both useful and of a type ordinarily necessary...." *Webb,* 471 U.S. at p. 243, 105 S.Ct. at p. 1929. Like the unsuccessful plaintiff in that case, Celanese has made only a blanket request for fees. "On this record, the district court correctly held that all of the administrative work was not compensable." *Webb,* at p. 243, 105 S.Ct. at p. 1929. Furthermore, Celanese cannot demonstrate that work before the Patent Office is "ordinarily necessary" in a case of this type. The sum will be disallowed in its entirety.

■ Next, defendant seeks to recover its attorney fees for services rendered in intervening in PPG's appeal to the Federal Circuit from the adverse decision of the Patent Office. The amount claimed is $73,-

140.00. We believe that these fees are not allowable in light of the fact that application for attorney's fees may be made to the Federal Circuit under its Rule 20(a)(1). We believe that the entire amount of the fees spent before the Federal Circuit should be disallowed under 35 U.S.C. § 285. *See Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688 (Fed.Cir.1984).

Next, defendant seeks recovery of approximately $49,277.77 for disbursements made by Fish & Neave in the Patent Office proceedings and in the Federal Circuit appeal. These expenses are disallowable for the reasons set out above with reference to the disallowance of fees for proceedings before the Patent Office and the Federal Circuit court.

Celanese seeks to recover $338,400.00 for in-house counsel fees. Plaintiff contends that fees for in-house counsel services should not be allowed under the authority of *Gilbreth International Corp. v. Lionel Leisure, Inc.*, 622 F.Supp. 478, 486 (E.D.Pa. 1985). The *Gilbreth* discussion of the matter is quite brief, but it appears the court disallowed the requested house counsel fee solely because the attorney was a salaried employee. That result is contrary to the decision reached by the Supreme Court of the United States in the case of *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), where it held that clients represented by Legal Aid attorneys could recover fees based on market rates despite the fact that the Legal Aid attorneys were salaried and might have lower costs. The *Gilbreth* result is also contrary to the decisions in *Scott Paper Co., supra,* and *Pittsburgh Plate Glass Co., infra.*

 We do not read *Blum* as suggesting that an attorney fee award should be made simply because services were performed by one who happens to be a lawyer. When house counsel is performing the usual monitoring and consultation function, he or she is acting as the client, and no fee is appropriate. For a portion of this case, however, house counsel were functioning as the lead litigators. If an award to them for that period is otherwise appropriate, it may not be denied on grounds that those lawyers were salaried employees.

 Plaintiff also contends that the attorney fees for house counsel, if any are awarded, should be based on the portion of counsel's salary which actually represented the work attributable to the litigation. Reliance is had upon *Pittsburgh Plate Glass Co. v. Fidelity & Casualty Co. of N.Y.*, 281 F.2d 538, 542 (3rd Cir.1960), and *NAACP v. Detroit Police*, 620 F.Supp. 1173, 1194–95 (E.D.Mich.1985). *NAACP, supra,* holds that paralegal services should not be claimed as overhead or hourly billing rates assigned to them but only the amounts actually paid for time spent on the case should be allowed. By analogy, PPG argues that Celanese should be limited to award of that portion of the in-house counsel salaries attributable to time spent on this case. The Supreme Court squarely addressed this question in *Blum, supra,* and rejected use of a cost-based standard as contrary to congressional intent. If fees are otherwise recoverable by in-house counsel, they must be based on market rates.

 We do not believe that the fee award should include any fees for house counsel for work after January 1, 1980, when outside counsel assumed the representation. Even for the period during which in-house counsel had the onus of advocacy, there is a serious problem of lack of documentation. Messrs. Morgan, Genoni, and Price kept no contemporaneous time records, but they offer a retrospective estimate of the portion of their work time spent on this case. This provides the Court no basis for examining reasonableness of time spent, or duplication of effort, or inclusion of items—such as travel—that this Court ordinarily excises from a fee award. If suitable documentation is not provided, we do not believe that an award is authorized. *Webb v. Dyer County Bd., supra; Northcross, supra; Codex Corp. v. Milgo Electronic Corp.*, 541 F.Supp. 1198 (D.Mass. 1982); *Gilbreth International Corp. v. Lionel Leisure, Inc.*, 587 F.Supp. 605 (E.D.Pa.1983).

Celanese claims $4,244.54 for services provided by two law firms located in Virgi-

nia, and by Lynch, Sherman & Cox in Louisville, Kentucky. Plaintiff contends that none of this amount should be allowed because of the services rendered by Fish & Neave, Ogden & Robertson, and by in-house counsel. The bills provided by the law firms in question are very brief and do not spell out in detail the type of services rendered by them.

■ With such adumbrative descriptions of services, we must look to the circumstances of the case to determine reasonableness. Celanese had available the services of specialists in patent law. It also retained the well-respected Louisville firm of Ogden and Robertson. Under such circumstances, it would ordinarily be difficult or impossible to justify retention of yet another Louisville firm. Mr. Price's affidavit recites that he was consulted at Lynch & Cox because of his involvement with the case during his tenure as a salaried Celanese attorney. In other circumstances, we would deny award based on such a justification, but we will permit it here in light of our determination that house counsel served as lead attorneys for part of the case. We also note the far-flung nature of the discovery, and the likelihood that work needed to be performed in Virginia. We shall assume for purposes of this proceeding that the services rendered by the Virginia firms and by Lynch & Cox were necessary, but we will reduce the amount by 20% because of lack of fuller documentation and the possibility of duplication. *See Shiley, Inc. v. Bentley Laboratories, Inc.*, 601 F.Supp. 964, 225 USPQ 1013, 1019 (C.D.Cal. 1985), *aff'd* 794 F.2d 1561 (Fed.Cir.1986).

■ Celanese requests $5,526.50 in fees for services of expert witnesses who did not testify. In *Northcross*, the Sixth Circuit held that expert witness fees are not part of a "reasonable attorney fee," and they are recoverable, if at all, pursuant to 28 U.S.C. Sec. 1920. We are mindful of the admonition that as to items not specifically set out in the statute, our discretion should be "sparingly exercised." *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964). Our own District has taken the position

that expert fees are not usually allowed. *Grider v. Ky. & Ind. Term.R.Co.*, 101 F.R.D. 311 (W.D.Ky.1984).

It is very difficult to make any generalizations about the appropriateness of taxing expert fees. The case of *In Re: Air Crach Disaster, Etc.*, 687 F.2d 626 (2d Cir. 1982) contains an excellent discussion of the widely varying roles experts can play in litigation, and it is quite clear that some such roles deserve taxation as costs, while others are not properly compensated, being more in the nature of investigation or style. In the case of *Greenspan v. Automobile Club of Michigan*, 536 F.Supp. 411, (E.D. Mich.1982), Chief Judge Feikens held that expert witness fees are recoverable if they are reasonable and necessary. In *NAACP v. Detroit Police*, 620 F.Supp. 1173, 1197 (E.D.Mich.1985), the district court disallowed expert fees incurred by the prevailing party even where the experts had testified in court. The rationale employed by the court was that the fees were in effect for testimony which was of no use to the district court in making its ultimate decision.

■ We believe that in patent law cases, expert testimony is often essential to make the issues minimally accessible to the Court. On the other hand, it is often difficult to label expert services necessary in a case in which the witnesses were not called upon to testify. Considering all factors, we believe it would be fair to permit Celanese to tax as costs one-half of the expert fees paid to Messrs. Colburn & Gambrell.

Finally, with regard to the remainder of the fees sought by Celanese, we admit to considerable difficulty in assessing reasonableness. The bills submitted by Fish & Neave to its client suggest the performance of legal work, but, standing alone, they amount to little more than feckless mumbling when offered in support of a judicially awarded fee. The statements identify some of the work performed, but they fail to indicate how much time was spent on any given endeavor. They also fail to indicate which lawyer performed any given function, or what fee is charged for his or her work. These strangely non-de-

scriptive invoices may have been entirely acceptable to a client working closely with the firm on a day to day basis, but they do little to assist us in determining whether work was duplicative, whether the time spent on any given task was reasonable, whether lawyers performed work that could have been performed by less expensive personnel, or whether items are included that should not be compensated at all.

By means of hours of apparently tedious work, Fish & Neave has advised the Court how much time was spent on the case by each attorney for each billing period. Even as supplemented, the application leaves unstated the nature of the work done by any given lawyer and the total time spent on any particular function. Nonetheless, by examining the disbursements notations, we can ascertain that there was a high level of duplication of effort. For example, two house counsel and three Fish & Neave attorneys attended deposition in Pittsburgh on June 17 and 18, 1980. The first week in August of that year saw three house counsel and three Fish & Neave attorneys traveling to Pittsburgh. Four Fish & Neave attorneys appeared at oral argument before the Federal Circuit in February 1986. The disbursements records indicate that there were regularly three and four attorneys in attendance at each event in the case, and we cannot justify this as reasonable in any way. As the Court noted in *Codex, supra,*

> The actual time spent and billed by plaintiffs' attorneys does not necessarily equal the reasonable time spent; it merely provides the starting point for my inquiry.

541 F.Supp. at 1203.

■ Just as there must be some evidence to support the number of hours expended, there must be some evidence to support the reasonableness of the hourly rate charged. *Lam, Inc. v. Johns-Mansville Corp.,* 718 F.2d 1056 (Fed.Cir.1983). Affidavits have been offered in support of the rates claimed, and the bills, as adjusted, are represented as having been paid by Celanese. Reports of the American Intellectual Property Law Association (AIPLA) indicate that the Fish & Neave hourly rates are considerably higher than most in the field.

For example, the Schwartz Affidavit indicates that he has a billing rate of $285, and that he has practiced law for twenty-three years. The 1985 AIPLA Report indicates that the median rate for partners with twenty-five years of experience in the field was $144. The rate for the 75th percentile—the highest category reported—was $164 per hour. Similarly, Ron Schulman, who has practiced for six years, seeks an hourly rate of $140. The 1985 median for an associate with seven years experience was $108 per hour, and the 75th percentile rate was $117. We might well have questioned whether the Fish & Neave hourly rates are "the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter, supra,* at p. 149. It is significant that these rates have not been challenged by PPG, which is in a good position to know market rates. Therefore, other than the adjustments made elsewhere in this opinion, we will not disturb the hourly rates claimed.

It should be clear that our concerns relate solely to the documentation provided by Fish & Neave. For most of the time involved, Ogden & Robertson submitted detailed and itemized contemporaneous billing records reflecting the information necessary for a fee analysis. We have seen no reason to question either time or rates. We reject PPG's suggestion that the amount of the regular retainer should be subtracted from the fee application. As discussed above, it is well established that reasonable hours should be compensated at the reasonable market rate.

■ In light of our action on the portion of the fee request attributable to preparation of the fee application itself, we believe that the Fish & Neave documentation as a whole, albeit complex and unorthodox, is sufficient to support an award of fees. However, a 20% reduction should be made for duplication and lack of documentation. The amount of this billing which is not attributable to the Patent Office and

Federal Circuit services and to other items which the Court has previously disallowed or diminished is the amount of $327,270.00. Therefore, an award is made to defendant of $261,856.00.

The Court of Appeals for the Federal Circuit has determined that a prevailing party's fee award under 35 U.S.C. § 285 includes a recovery for costs and disbursements "necessary for the case." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1069 (Fed.Cir.1983). As explained in *Central Soya Co., Inc. v. George A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed.Cir.1983),

> The purpose of Sec. 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit.... We interpret attorney fees to include those sums that the prevailing party incurs in the preparation for the performance of legal services related to the suit.

■ In *Northcross, supra*, at p. 639, the court held that a prevailing party may recover under 42 U.S.C. § 1988 "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable" pursuant to 42 U.S.C. § 1988. They should also be recoverable under 35 U.S.C. § 285. *Lam, Inc., supra.*

Utilizing the guidance of *Northcross, supra*, we believe that some expenses, such as copies of depositions as well as expert fees, discussed above, may be recoverable pursuant to the general costs provision, 28 U.S.C. Sec. 1920. Accordingly, we will deny recovery for copies of depositions, in the total amount of $7,886.95, as set forth in Genoni Affidavit Exhibits 1 and 2. *Grider, supra.* Because of the peculiar nature of patent law, we will permit recovery of the expert consulting services fees set forth in Genoni Affidavit Exhibit 4, and, as discussed earlier, we will allow recovery of half of the expenses requested in Genoni Exhibit 5. The "possible expert" expenses requested in Genoni Affidavit, Exhibits 9 and 10, will be disallowed.

■ Patent file copies were essential for this case, and we will award in full the $1,580 requested in Genoni Affidavit Exhibit 3. We do not agree that air transport of documents (Genoni Affidavit Exhibit 7) was necessary, and that expense, in the amount of $54.85, will be denied.

■ We believe that the $777.52 requested in Genoni Affidavit Exhibit 8 for room rental for a deposition is a necessary expense ordinarily charged to a client, and incurred in preparation for performance of legal services related to the suit. This will be allowed as part of the attorney fee.

■ We are left with the expense reports attached to the Genoni Affidavit as Exhibit 11, and the disbursements requested by the Fish & Neave papers. The Celanese in-house counsel travel expenses combined with the Fish & Neave travel expenses add to a total request of $28,977.74. Because of the unusual nature of this case, we agree that some travel was necessary, but we believe this figure to be unacceptably high. Federal employees' travel is compensated on a $50 per diem basis (reduced to $33 for the day of return), and we believe this would be a fair method of compensation. Although federal employees are not routinely authorized to use air transportation, we will reimburse counsel's coach class air travel. Utilizing this method, a total of $17,770.80 would reimburse Celanese for all counsel's travel. However, as noted above, there was a disturbing pattern of attendance at every event by several attorneys, sometimes as many as five or six. If the federal compensation method is utilized, and the award is further limited to compensation for a maximum of two attorneys on each trip, Celanese is entitled to a total of $10,197.80. This is a fair measure of reimbursement pursuant to 35 U.S.C. Sec. 285.

Of the total of $88,026.95 in disbursements claimed by Fish & Neave, $35,922.24 is described as "miscellaneous expenses," including photocopies, telephone tolls, and "etc." Another $22,867.12 is billed as Fish

& Neave reproduction of documents. There are in addition repeated charges for messenger expenses and airplane tickets for service of papers in the Patent Office.

*Northcross, supra,* holds that among the costs that are "on a different footing," and recoverable only pursuant to 28 U.S.C. Sec. 1920, if at all, are the following:

> ... those costs incurred by a party to be paid to a third party, not the attorney for the case, which cannot reasonably be considered to be attorney's fees. These include, among others, docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps.

611 F.2d at 639 [citations omitted].

■ Examination of the "disbursements" noted on the Fish & Neave statements reveals a total of $16,380.24 in twenty-seven payments to unidentified third parties, in amounts ranging from $10 to Myrtle H. Hurst & Associates to $11,998.00 to Pandick, Inc. Without a specific explanation of what these expenses are and why they should be taxable as costs pursuant to 28 U.S.C. Sec. 1920, we must disallow all of them.

The category of "miscellaneous" is quite puzzling. For example, the July 1, 1980 bill includes a figure of $2,465.23 for "miscellaneous expenses including telephone tolls, photocopies, postage, etc." The October 1, 1980 bill asks $2,808.51 for "miscellaneous expenses including telephone tolls, air freight, library research, postage, etc." Some such expenses, such as air freight and library research, are simply not recoverable under any theory. We are quite curious about what "etc." involves, since $2,500 is a great deal of money for stamps. We are also puzzled by the inclusion of "photocopies" in some of the "miscellaneous" entries, given the separate line item for "Fish & Neave reproduction of documents."

■ Nonetheless, we believe that some portion of the "miscellaneous" expenses were necessary to the case, even under the restrictive definition of necessity that this Court employs in examining 28 U.S.C. Sec. 1920 costs. Accordingly, we will permit recovery of 80% of the $35,922.24 in "miscellaneous" disbursements, and we will disallow the $22,867.12 claimed for "Fish & Neave reproduction of documents," since copies made for the convenience of counsel are not "necessary" to the case as we view that term.

An order in conformity herewith has this day entered.

### ORDER

This matter having come before the Court on application of Celanese Polymer Specialties Company, Inc. for attorney fees, and the Court having entered its memorandum opinion and being advised,

IT IS ORDERED that Celanese shall recover of plaintiff PPG Industries, Inc. attorney fees and expenses in the following amounts:

| | |
|---|---|
| Attorney fees | $273,107.31 |
| Expert witness costs | 3,926.25 |
| Travel expenses | 10,197.80 |
| Patent file copies | 1,580.00 |
| Deposition expense | 777.52 |
| Miscellaneous expenses | 28,737.79 |
| Total | $318,326.67 |

This is a final and appealable order and there is no just cause for delay.